519 P.2d 177

**STATE of Arizona, Appellee,**

**v.**

**Stanley C. HARWOOD, Appellant.**

**No. 2527.**

Supreme Court of Arizona,
In Banc.

Feb. 22, 1974.

Rehearing Denied March 26, 1974.

Gary K. Nelson, Atty. Gen., by Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Lieberthal & Kashman, by Howard A. Kashman, Tucson, for appellant.

STRUCKMEYER, Justice.

Appellant, Stanley Cecil Harwood, was charged with, tried and convicted of the murder of Wanda C. Fiak. From the conviction for second degree murder and the sentence thereon, he appeals.

Appellant was a court reporter, employed by the Pima County Superior Court. Wanda C. Fiak worked for him as a part-time transcriber. On the evening of March 16, 1971, appellant went to a local bar where later Mrs. Fiak joined him. They stayed there for several hours. When they left, an argument occurred in the bar's parking lot concerning whether appellant was going directly home. Mrs. Fiak said that she would follow appellant and if he stopped or she lost him, she would go to his house and cause a commotion. When appellant left, Mrs. Fiak followed him. After a period of evasive driving with Wanda Fiak in pursuit, appellant drove up behind her at an A. J. Bayless Market and twice rammed her. He left his automobile and, with a pistol in his hand, approached her car. Mrs. Fiak laughed and appeared to be taunting him. Appellant then fired at her through the window of her automobile, striking her three times.

The first question presented is whether it was error for the court to deny appellant's application for a change of judge. The application was filed one day before appellant's trial was set and it alleged bias and prejudice on the part of the trial judge. By Rule 199, Rules of Criminal Procedure, 1956, A.R.S. 17:

"The application for change of judge shall be made at least three days before the date the action is called for trial, unless the disqualifications were not known before the three day period, in which

event such fact shall be set forth in the affidavit of disqualification."

Concerning this rule, we said in Hendrickson v. Superior Court, 85 Ariz. 10, 12, 330 P.2d 507, 508–509, 73 A.L.R.2d 1235, 1237 (1958):

"The rule is that an affidavit of bias and prejudice must be seasonably filed or it is waived. It is likewise the rule that when the disqualifying facts are unknown to affiant until after the expiration of the time that the affidavit should normally be presented, the application for change of judge is timely if made upon the discovery of such facts."

Appellant asserts that the information upon which he bases the disqualification of the trial judge became known to him only after the three-day period commenced. His information was that the trial judge had at one time experienced some trouble with two other court reporters whom appellant expected to call as witnesses in his case, and appellant felt that this would prejudice the judge against them as witnesses.

An affidavit which is not timely filed may be challenged and, if so, the legal sufficiency of the affidavit must be determined by the presiding judge. A hearing should be had and an inquiry made to disclose the facts relied upon. State v. Neil, 102 Ariz. 110, 114, 425 P.2d 842, 846 (1967).

"If the facts are not such as would warrant the affiant as a reasonable person in honestly believing that the questioned judge is biased * * * the application should be denied as a matter of law." State v. Neil, *supra*.

The reasons for disqualification of the trial judge after the three-day period provided for by Rule 199 were not sufficient to raise any substantial question as to the bias and prejudice of the trial judge. The application was properly denied.

Appellant further argues that his lawyer did not make him aware of the facts upon which he based his application

prior to the three-day period. We have repeatedly held, however, that a criminal defendant is not entitled to a reversal of his conviction based upon the actions of his counsel unless the actual representation provided was so clearly inadequate and ineffective as to reduce the defense to a farce or a sham. *See, e. g.,* State v. McKinney, 108 Ariz. 604, 503 P.2d 946 (1972).

■ Appellant argues that this case requires reversal because at least five jurors were successfully challenged by the prosecution because of their unequivocal opposition to the death penalty. We find no merit to this position. In State v. Crow, 104 Ariz. 579, 581, 457 P.2d 256, 258–259 (1969), we held:

"In Witherspoon, supra [Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)], and also in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the United States Supreme Court held that Witherspoon only applies where the death penalty is imposed on the accused. We so held in State v. Madden, 104 Ariz. 111, 449 P.2d 39."

■ The appellant urges that the State's chief investigator, Police Sergeant Durwood Weathers, who sat with the prosecutor throughout the trial at counsel table, was guilty of misconduct when he talked with several prospective jurors during the impanelment of the jury. Appellant does not argue that what was said was in any way prejudicial to his case. Hence, we think the holding in State v. Johnson, 97 Ariz. 27, 30, 396 P.2d 392, 393–394 (1964), is controlling here:

"During the course of the trial, it was discovered by one of the defense attorneys that Officer Beaman, the chief investigating officer for the State, was seen in conversation with two jurors. The trial court was informed of this matter and Officer Beaman was brought before the court in chambers and in the presence of defense counsel and the court reporter, it was learned the officer did talk to the jurors. The officer said the conversation did not concern the trial, but was rather just idle conversation concerning social subjects. The trial judge concluded that although such conduct is not to be condoned, under the circumstances of this case no harm was done."

We do not think that under the circumstances of this case any harm was done.

■ Appellant argues that it was error for the court to admit two exhibits into evidence. These exhibits are color photographs. One is a picture of appellant and the deceased seated on a couch, holding hands. It lends itself to the conclusion that the friendship of appellant and deceased was upon more than a professional or business basis. To that extent it had some materiality. The second picture is of appellant seated alone on the same couch. It does not have any particular materiality that we can discern but, then, neither does it engender sympathy for the deceased thereby prejudicing the jury.

The appellant urges that the court erred in denying his motion for a directed verdict for acquittal as to first degree murder on the grounds that the evidence failed to show a willful, premeditated crime. The facts in this case show that appellant armed himself with a revolver; that he did not fire in self-defense but, in fact, was the aggressor; that he fired more than one shot; and that three of the shots fired struck the body of the deceased. A directed verdict to a criminal offense should not be granted if the evidence is of such a character that reasonable minds may differ on the inferences to be drawn therefrom.

■ Murder is defined as the unlawful killing of a human being with malice aforethought, A.R.S. § 13–451. The question of malice is one for the jury and the use of a deadly weapon is sufficient evi-

dence from which the jury may find malice. State v. McIntyre, 106 Ariz. 439, 477 P.2d 529 (1970). Reasonable minds could conclude that appellant was actuated by malice. The jury could conclude that the killing was done with malice from the fact that the deceased was a woman and that it was wholly unnecessary to resort to the use of a deadly weapon.

■ Appellant urges that the court below committed error in excluding testimony of diminished responsibility. It did not. State v. Malumphy, 105 Ariz. 200, 461 P.2d 677 (1969); State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965), cert. den. 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966).

Appellant urges that the court erred in refusing to instruct the jury on the lesser offense of manslaughter. In this, we think appellant is correct and that the trial court committed reversible error.

By A.R.S. § 13-455, manslaughter is defined as the unlawful killing of a human being without malice. It is voluntary manslaughter if the homicide occurs upon a sudden quarrel or heat of passion, A.R.S. § 13-456.

■ In State v. Ramos, 108 Ariz. 36, 38, 492 P.2d 697, 699, we said:

"The * * * question is whether the evidence presented at the trial showed that the defendant might have been guilty of manslaughter rather than second degree murder. * * * Where defendant's testimony establishes the elements of manslaughter, * * * he is entitled to present his theory to the jury * * * since the court must instruct on every grade of offense which the evidence tends to show the defendant guilty."

A legal presumption of malice arises from the deliberate use of a deadly weapon in such a way that it is likely to and does produce death, because it is presumed that there is a deliberate, formed design existing in the mind of the accused to kill. We

said, however, in State v. Preis, 89 Ariz. 336, 339, 362 P.2d 660, 662 (1961):

"While the presumption may take the place of proof and be prevailing in the absence of any evidence to the contrary, the presumption is not one of law; it is to be drawn by the jury as a matter of fact. It is a presumption of fact which permits the jury to find intent from the use of a deadly weapon. A presumption of fact is nothing more than a prima facie inference which shifts the burden of going forward with the evidence to the defendant to prove circumstances of mitigation or circumstances that justify or excuse the killing unless the state's proof does not amount to murder. A.R.S. § 13-454."

■ To reduce a homicide from murder to manslaughter committed on sudden heat of passion, the passion must be aroused by adequate provocation. State v. Schantz, *supra*.

As the Supreme Court of California said:

"Mere unrestrained and unprovoked rage, or a 'heat of passion' to wreak vengeance, of a legally sane although emotionally unstable or nervous person is no defense to homicide. To reduce a homicide from the class of murder to that of manslaughter the evidence must be such as to reasonably lead the jury 'to believe that the defendant did, or to create a reasonable doubt in their minds as to whether or not he did, commit his offense under a heat of passion * * * [T]his heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and * * * consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believed that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.'" People v.

**380**

Danielly, 33 Cal.2d 362, 202 P.2d 18, 27, cert. den. 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1728 (1949).

■ In the instant case, the evidence strongly suggests that Mrs. Fiak was jealous of appellant and did not want him to stop at another bar to drink before going home. She threatened to follow him and raise a commotion at his home if he did stop, and she did, in fact, follow him everywhere he went until the final incident in the Bayless parking lot. We think the jury could have considered from the combination of her threats and actions that the presumption of malice from the use of a deadly weapon was destroyed and could consider that the killing was voluntary manslaughter induced by heat of passion.

The State argues that this case is controlled by our pronouncement in State v. Schroeder, 95 Ariz. 255, 389 P.2d 255 (1964), cert. den. 379 U.S. 939, 85 S.Ct. 347, 13 L.Ed.2d 350 (1964). There, we held that when the sole defense to a charge of murder is an alibi or plea of insanity, no instruction on included crimes is necessary. While it is true that appellant's defense was insanity, still the jury might have believed that he did not have the requisite malice for murder because of the provocative circumstances here presented. As we said in State v. Schroeder, *supra:*

"* * * the state of the record must not be such that defendant can only be guilty of the crime charged or not guilty at all."

Here, the state of the record was not such that defendant could only be guilty of murder or not guilty at all.

We have examined the claimed errors in admission of evidence and arguments to the jury and find that they have little merit in that they are unlikely to reoccur in retrial or would not be so prejudicial as to be considered fundamental.

Judgment reversed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.