520 P.2d 288

**STATE of Arizona, Appellee,**

v.

**Jesse Lee EDGIN, Appellant.**

**No. 2790.**

Supreme Court of Arizona,
In Banc.

March 27, 1974.

Rehearing Denied April 30, 1974.

Gary K. Nelson, Atty. Gen., Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Tom E. Wildermuth, Coolidge, for appellant.

LOCKWOOD, Justice:

Appellant, Jesse Edgin, was convicted below of second degree murder and sentenced to a term of not less than forty nor more than forty-five years. He appeals from that conviction.

On January 3, 1973, the body of James Earl Thomason, Jr. was discovered in the desert by members of the county roadgrading crew. The Pinal County Sheriff's Office was contacted and an investigation was begun. The date of death was determined to be January 2, 1973. The victim had been stabbed between fifty and sixty times, shot three times with a .22 caliber pistol, suffered blunt blows to the head and had two fingers broken.

At the scene the investigating officers found tire tracks which matched the tires of a truck owned by the appellant. Foot prints matching the appellant's boots and slippers were also found along with tracks made by a woman. There were other unidentifiable tracks and evidence that a scuffle occurred in two places.

The police also recovered from the residence of the appellant the appellant's boots which had bloodstains on them, a .22 caliber pistol, and the display box which the pistol had been sold with. Laboratory analysis of the evidence disclosed that the bloodstains were the same blood type as the victim's. Also a hair was discovered embedded in a crevice of the boot which may have come from an eyebrow or eyelash. The laboratory analysis of the hair could not establish whether it came from the victim.

At the trial the prosecution based its entire case on the circumstantial evidence uncovered during the course of the investigation. The appellant's defense was that he was supposed to meet the victim out in the desert but when he arrived, the victim was already dead. He also testified that he returned to the scene later with his wife which explained the presence of a woman's footprints and the tracks of his slippers in the area where the victim was found. The appellant was found guilty of second degree murder by the jury.

Appellant contends that the court erred in refusing to instruct the jury on the lesser offense of manslaughter. It is well settled that a defendant is entitled to have the jury instructed on every form of the verdict which is justified by the evidence. State v. Ramos, 108 Ariz. 36, 492 P.2d 697 (1972). Under the provisions of A.R.S. § 13–455, the definition of manslaughter is the unlawful killing of a human being without malice. A legal presumption of malice arises from the deliberate use of a deadly weapon in such a way

that it is likely to and does produce death, because it is presumed that there is a deliberate formed design existing in the mind of the defendant to kill. It is voluntary manslaughter if the homicide occurs upon a sudden quarrel or heat of passion, A.R.S. § 13–456. In order to reduce a homicide committed upon a sudden quarrel or in the heat of passion from murder to manslaughter, the passion must be aroused by adequate provocation. State v. Harwood, 110 Ariz. 375, 519 P.2d 177 (1974).

■ In the instant case the appellant denied that he killed the victim. We can find nothing in the evidence which would establish that the appellant was aroused by adequate provocation. Accordingly we hold that the option of finding the appellant guilty of manslaughter was properly denied the jury. State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973).

The appellant also contends that the trial court should have given an instruction regarding voluntary intoxication sua sponte. It is the contention of the appellant that because there was evidence of intoxication, an instruction regarding the effect of alcohol in forming the intent to commit the crime of murder should have been given. However, the record reveals that counsel for the appellant specifically rejected such an instruction. The transcript reveals the following exchange:

"THE COURT: You feel there is no issue as to the voluntariness.

"MR. BRUMAGE: No.

"THE COURT: Okay. We won't give it. What about 203.10, which is the effect of intoxication on intent.

"MR. BRUMAGE: No.

"THE COURT: You don't want it? Okay.

"MR. BRUMAGE: It is not our defense that he killed him and didn't know what he was doing. I don't want anything that would imply such a thing."

■■ To hold that it was error for the trial court to give such an instruction after defense counsel positively rejected it would be placing the trial court in an impossible position. Had defense counsel requested such an instruction, he would not have been entitled to it based upon the facts of the case. The mere fact that the appellant may have been drinking prior to the commission of the crime is not enough to require an instruction on intoxication; there must be evidence that the drinking had such substantial effect on him that he could not harbor malice. The appellant's factual defense contained nothing related to intoxication. The trial court had no duty to instruct on the effect of intoxication especially where the defense counsel clearly rejected such an instruction because of its undesirable implications to the appellant.

The next issue is whether the trial court erred by allowing testimony from the state's expert witnesses regarding ballistics tests and the origin of a hair found embedded in the defendant's boot. With regard to the admissibility of the ballistics test, the expert witness testified that he could not positively say that the bullets came from the appellant's gun but only that the appellant's gun could not be eliminated as the murder weapon. With regard to the single strand of hair found embedded in the appellant's boot, the expert witness was only able to testify that the hair's characteristics were consistent with those of an eyebrow or eyelash hair. Appellant contends that the introduction of this testimony caused substantial prejudice to his case and that any slight probative value was far outweighed by the prejudice to the appellant. Therefore it is urged that it was reversible error to have permitted the admission of such testimony.

■ Confronted with a similar problem, this court has held that in homicide cases it is proper to admit evidence of similarity of blood type between the deceased's blood and blood found in the possessions of the defendant. Such evidence is not excludable merely because it tends to establish a possibility rather than a probability. State v. Brierly, supra. State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954), overruled on

other grounds, State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963). We find that the expert testimony which the appellant complains of was clearly admissible. The fact that it does not establish a probability would merely go to the weight of the testimony rather than its admissibility.

Appellant also contends that it was reversible error for the prosecution to refer to a knife seized in a search of the appellant's home which had no bearing or connection with the case. The testimony in question is as follows:

"Q. Were there any other items seized at the Edgin residence that evening?

"A. Some clothing, a knife, another pair of shoes, I believe.

"Q. Anything else?

"A. Four garbage bags from the storage area outside the trailer."

 No objection to that testimony was made at that time. Later in the judge's chambers, counsel for the appellant objected to any further reference to the knife on the grounds that it had no bearing on the case. The objection was sustained and prosecutor admonished not to mention the knife again. No motion for mistrial was made. No further reference was made to any specific knife or the knife seized in the appellant's house. The only other reference was a question directed at witness as to whether the appellant was known to carry a knife. Such a question was relevant and did not violate the earlier admonition against discussion of the particular knife seized from the appellant. We can find no error.

Appellant argues that it was reversible error for the trial court to deny his motion for a mistrial based upon testimony regarding the actions of the appellant's wife. Specifically appellant now objects to testimony offered by a neighbor of the appellant that Mrs. Edgin brought the pistol and its display case to him the day after the murder and offered to trade it for a pistol owned by the neighbor. No objection was timely made however. The trial judge corrected any possible error when he instructed the jury to disregard the comment. We find no error.

The judgment of the lower court is affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.