536 P.2d 1035

**STATE of Arizona, Appellee,**

v.

**Peggy Jane JOHNSON, Appellant.**

**No. 2975.**

Supreme Court of Arizona,
In Banc.

June 20, 1975.

Rehearing Denied Sept. 16, 1975.

N. Warner Lee, Atty. Gen., by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Martin, Feldhacker & Friedl by William H. Feldhacker, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant, Peggy Jane Johnson, was convicted by jury of second degree murder, and thereafter brought this delayed appeal.

In August of 1971, appellant and her two children were sharing the home of her mother and stepfather, Robert McDevitt. During the course of the evening of August 11, 1971, she consumed three alcoholic drinks, but she was not intoxicated. Appellant returned home about 1:15 a. m. After entering the house through the kitchen door and determining that her stepfather, an alcoholic, had been drinking, she then went to her children's bedroom where she played with the children. In answer to the question, "What happened next * * * ?" she testified:

"A. I don't remember anything after that."

The next thing she remembered was that she was in the front room with her mother

and stepfather. Her mother was screaming, " * * * telling me to get a doctor, * * * that I had stabbed Bobby."

Appellant's mother testified that after appellant had gone into the children's bedroom, appellant returned to the kitchen where she picked up a kitchen knife and went into the stepfather's bedroom, where he was asleep in an alcoholic stupor; that the mother then followed appellant into the stepfather's bedroom and that the stepfather and appellant were struggling, apparently for the possession of the knife, but that the stepfather had already been fatally wounded, a penetrating type wound into his chest.

Appellant also testified that she had been confined four months at the Arizona State Hospital to determine if she could recall the incident, but that they were unable to help her remember.

Dr. Norman D. Duley, a psychiatrist who testified at the trial, found that appellant was suffering from a genuine involuntary dissociative or neurotic amnesia, " * * * she is not just saying I can't remember. I think she really can't remember. * * *." The doctor also testified about appellant's amnesia that " * * * it is likely that it will not relent except under the influence of prolonged therapeutic contact as it would not be in her best interests to recall the events leading up to the actual murder." and "It is unlikely that she would recall the above events."

It is urged that the court committed fundamental error in allowing the appellant to proceed to trial when she could not adequately assist in her own defense because of her inability to remember the details of the slaying.

■ Appellant's argument has, however, been answered by this Court in State v. McClendon, 103 Ariz. 105, 437 P.2d 421 (1968). There, after a hearing, as here, the trial court found that the amnesia was "relatively permanent in nature, at least it is apparent that a reasonable amount of treatment will not effectuate a recovery of

the Defendant's memory." On appeal we held that defendant was competent to stand trial and that the trial court did not violate his right to due process. We quoted from Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (1966):

> " 'Unless an accused is legally insane, the law is not and should not be so unrealistic and foolish as to *permanently free, without acquittal* by a Judge or a jury, a person against whom a prima facie case of murder is made out.' (Emphasis in original) Commonwealth v. Price, supra, at 763."

We said:

> "In short, limited amnesia does not totally incapacitate the defense and the defendant is free to assist counsel in numerous ways." 103 Ariz. at 109, 437 P. 2d at 425.

And *see also* People v. McBroom, 264 Cal. App.2d 242, 70 Cal.Rptr. 326 (1968), holding that the trial of a presently rational person should not be reversed where he was given adequate time, counsel and medical attention merely because he asserts he cannot remember the events surrounding the crime. Amnesia is easy to feign and hard to disprove.

■ The appellant argues that the trial court committed reversible error in failing to instruct the jury on voluntary manslaughter. Manslaughter is defined by statute, A.R.S. § 13–455, as the unlawful killing of a human being without malice. It is voluntary upon a sudden quarrel or heat of passion, A.R.S. § 13–456. The heat of passion sufficient to reduce murder to manslaughter must be a passion that is aroused by adequate provocation. State v. Edgin, 110 Ariz. 416, 520 P.2d 288 (1974). Mere unrestrained and unprovoked rage of a legally sane person is not a defense to a murder charge. State v. Harwood, 110 Ariz. 375, 519 P.2d 177 (1974). While a defendant is entitled to instruction on voluntary manslaughter if the testimony establishes that the homicide is induced by heat of passion, State v. Harwood, *supra,*

where there is no evidence that a defendant has been aroused by adequate provocation it is not error to refuse to instruct the jury on manslaughter, State v. Edgin, *supra*.

■ The evidence establishes that the appellant and the deceased were not always on the most friendly of terms. For example, she had the deceased jailed some two or three years before because, " * * * he was drunk and raising the devil with me and the kids." However, nothing occurred prior to the homicide which would justifiably support a charge to the jury on voluntary manslaughter. Appellant testified:

"Q. Did you and Mr. McDevitt ever have arguments?

A. Just small ones like everybody, every family does.

Q. And how often, if you can tell, how often were you—

A. Oh, not often at all. I didn't see that much of him.

Q. Was Mr. McDevitt, what was his relationship with your children?

A. Oh, he was—he was real good to them.

Q. He was good to the children?

A. Yes, sir.

Q. And you were aware of this?

A. Yes, sir.

Q. And was he good to them sober, drunk or any—

A. Yes, sir.

Q. —any other way?

A. Yes, sir.

Q. How was Mr. McDevitt's relationship with your mother?

A. He got along all right.

Q. This was sober or drunk or any—

A. Well, they didn't get along too well when he was drunk.

Q. Did she complain about his drinking?

A. Not a lot."

She further testified:

"Q. Had you had an argument of any nature with Robert McDevitt within the two or three days preceding August 11 of 1971 that you remember?

A. Not that I recall.

Q. Can you recall any argument with Robert McDevitt that you might have had within two weeks of August 11?

A. No, sir.

Q. Do you know of anything that Robert McDevitt might have done within the two-week period immediately preceding August 11, 1971, that might have caused you grief or concern?

A. No, sir."

And she testified:

"Q. Peggy, can you think of any cause or any reason that you would have done this or you might have done it?

A. No, sir.

Q. Nothing had happened in the, at least not too distant past, that raised any animosity in you toward Robert McDevitt?

A. No, sir.

Q. To this day, do you have any animosity toward Robert McDevitt?

A. No."

■ Appellant finally urges, from the testimony of Dr. Duley to the effect that appellant acted " * * * in an automatic way" and " * * * like a hypnotized person," that the jury could have found a want of malice and therefore the homicide was of no higher degree than manslaughter. As we understand appellant's position, this is but another attempt to introduce the irresistible impulse test of insanity. The theory of an irresistible impulse has been repeatedly rejected by this Court. *See*

State v. Karstetter, 110 Ariz. 539, 521 P.2d 626 (1974).

The judgment of the court below is affirmed.

CAMERON, C. J., and LOCKWOOD, HAYS and HOLOHAN, JJ., concur.