568 P.2d 1054
**STATE of Arizona, Appellee,**

v.

**Charles Russell DOSS, Appellant.**

**No. 3069.**

Supreme Court of Arizona,
In Banc.

July 7, 1977.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Grove M. Callison and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Carmichael, McClue & Stephens by M. Jeremy Toles and James J. Syme, Jr., Phoenix, for appellant.

HOLOHAN, Justice.

Charles Russell Doss was tried and convicted of first-degree murder. A sentencing hearing was held pursuant to A.R.S. § 13–454, and the trial court found that there was an aggravating circumstance proved and no mitigating circumstances. The trial court sentenced the defendant to death. This appeal followed.

The facts of the case are not in dispute. The defendant and the victim, Peter Jesik, were attending junior college. There was ill feeling between them. On the day of the homicide during registration for the fall term the victim had made an insulting remark to the defendant. Thereafter the defendant drove to his home, got his revolver, returned to the college, and sought out the victim. He found the victim in the college gymnasium which was crowded with students registering for classes. The defendant came up to the victim from behind and emptied his revolver at him, killing the victim and wounding a student standing nearby.

The defense has never contested the fact that it was the defendant who killed the victim. The defense contended that the defendant was legally insane at the time of the homicide or that the circumstances justified at most a finding of manslaughter.

The points raised on appeal are interwoven and controlled by the evidence of the defendant's mental condition. The trial court admitted defendant's statements to police as voluntary, refused to allow the defendant to represent himself, and refused to find that his mental condition constituted a mitigating circumstance in determining the sentence to be adjudged. The jury found the defendant sane and guilty of first-degree murder.

A substantial portion of the evidence in the case dealt with the defendant's mental condition. This evidence was presented at both pretrial hearings and at trial. Early in the case the defendant was examined by psychiatrists to determine whether he was competent to understand the proceedings and assist counsel in the case. At the hearing on this latter issue the medical experts agreed that the defendant was competent to be tried, but there was testimony at the hearing that the defendant was suffering a mental illness.

The defendant had become dissatisfied with his court-appointed counsel after a few months. He requested the trial court to dismiss the defense counsel and allow him to represent himself. This request was not acted on until the defendant was found competent to stand trial. After defendant was adjudged competent to stand trial, the trial judge granted the defendant's request to dismiss appointed counsel and represent himself.

Relying on the holding in *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), the prosecutor filed a motion for determination of the defendant's competency to conduct his own defense. After hearing argument on the motion, the trial court set the matter for hearing. On the same day the defendant filed a motion to withdraw as his own attorney. He asked that appointed counsel be restored because the defendant feared that he would not be able to function properly under emotional stress. Six days later the defendant wrote to the trial judge advising the court that he was withdrawing his resignation as his own attorney because appointed counsel had expressed an opinion that the defendant couldn't "win."

At the hearing on the defendant's competency to conduct his own defense, two psychiatrists testified that the defendant was suffering from a mental illness which substantially impaired his ability to make a competent decision concerning a waiver of constitutional rights. Faced with this evidence the trial court set aside the previous order relieving appointed counsel, and the trial court ordered that the defendant be represented by counsel.

The defendant challenges this ruling. He argues that under the Arizona Constitution, Article 2 § 24 and under the Federal Constitution an accused has the absolute right to represent himself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The defendant further points out that the ruling of the trial court denying him the right to represent himself is totally inconsistent with the subsequent ruling by the same court that the statements made by the defendant to the police were voluntary.

As contended by the defense, subsequent to the ruling denying the defendant the right to represent himself, the state sought a hearing on the issue of the voluntariness of certain statements made by the defendant after his arrest and while in custody. At the hearing on this issue two of the psychiatrists who had testified at the hearing on the defendant's mental capacity to represent himself testified that the defendant was not competent to waive his constitutional rights for the purpose of making a voluntary statement. The state's psychiatrist disagreed and testified that the defendant, while suffering epilepsy and having a serious personality disorder, was not mentally ill. After the hearing the trial court ruled the defendant's statements were voluntarily made and admissible at trial. The statements made by the defendant to the police were admitted in evidence at the trial.

We agree with the position of the defendant that the two rulings by the trial court are inconsistent. Even the fact that the second hearing had additional opinion evi-

dence does not change the fact that the rulings cannot both be correct.

■ In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the United States Supreme Court noted that courts indulge every reasonable presumption against waiver of fundamental constitutional rights. The determination of whether there has been an intelligent waiver of right to counsel must depend upon the particular facts and surroundings of the case, including the background, experience, and conduct of the accused. A mentally incompetent defendant cannot knowingly or intelligently waive his constitutional rights. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Whether an accused has made an intelligent and knowing waiver of counsel is a question of fact. *Hallowell v. United States*, 197 F.2d 926 (5th Cir. 1952). The concern for determination of a proper waiver was expressed in *Johnson*:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst*, 304 U.S. 465, 58 S.Ct. 1023.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Federal Supreme Court stated that a high standard of proof was required for the waiver of constitutional rights.

■ We believe that the evidence presented at the hearing on the issue of waiver of counsel supported the trial court's decision that the defendant not represent himself. There was evidence that the defendant was physically unable to carry on his defense, and at various times the defendant has acknowledged that stress affects his speech and presents a danger of a seizure. *Faretta*, however, makes clear that the lack of skill and experience * is not the issue in making the choice of self-representation. The standard is still a knowing and voluntary relinquishment of a constitutional right. Although there was some argument made to the trial court concerning the physical ability of the defendant to represent himself, there was compelling evidence that the defendant was too emotionally disturbed to make a knowing waiver. As long as the trial court made a correct legal ruling it matters not upon what grounds he based the ruling. *State v. Sardo*, 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967).

■ The same principles applicable to waiver of counsel at trial are also applicable to waiver of counsel at the time of custodial interrogation. Guided by those principles we conclude that the trial court was in error in ruling the statements of the defendant as voluntary. The admission of these statements was error. From a review of the evidence, however, the error was harmless. The statements by the defendant concerning the crime added nothing to the case because the same matters were presented by the testimony of other witnesses. The effect of the defendant's statement can best be described by reference to the cross-examination of the police officer who took the statements:

"BY MR. RITCHIE:

"Q At the time you interviewed Mr. Doss, Detective Quaife, you were aware, were you not, that there were several hundred people in the gymnasium when the shooting took place, were you not?

"A This was my understanding, yes, sir.

---

* The defendant successfully represented himself in a case involving a traffic violation. He also represented himself in an aggravated battery case which did not go to trial. The defendant told one of the psychiatrists he "beat the case," but records indicate he was convicted of a reduced charge of simple battery and fined $200.

"Q And it is basically police procedure, even in a situation of that sort, to question a person who has been arrested for a crime committed in front of so many witnesses?

"A Yes.

"MR. RITCHIE: I have no further questions."

The factor of the defendant's mental condition again became an issue in the trial of the case because of the defense of insanity. There never was any doubt that the defendant fired the fatal shots which killed the victim. The only real question was the defendant's state of mind. The defense maintained that the defendant was insane at the time of the homicide or that his state of mind reduced the crime from murder to manslaughter.

■ The defendant may be suffering from a mental disorder, but such condition must meet the M'Naghten test in order for it to qualify as legal insanity. In *State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965) the rule was stated that:

"This test of legal insanity has two elements. An accused must have had at the time of the commission of the criminal act:

"(1) Such a defect of reason as not to know the nature and quality of the act, *or*

"(2) If he did know, that he did not know he was doing what was wrong." 98 Ariz. at 207.

■ The evidence was in conflict on the issue of legal insanity, and the jury by their verdict found the defendant legally sane. There was substantial evidence to support that verdict and we are therefore bound by that verdict. *State v. Cano*, 103 Ariz. 37, 436 P.2d 586 (1968); *State v. Daniels*, 106 Ariz. 497, 478 P.2d 522 (1970); *State v. Money*, 110 Ariz. 18, 514 P.2d 1014 (1973).

■ The defense argued that it was error for the trial court to refuse to instruct the jury on the effect of a verdict of not guilty by reason of insanity. This position has previously been rejected by this court in *State v. Jensen*, 111 Ariz. 408, 531 P.2d 531

(1975) and *State v. Peats*, 106 Ariz. 254, 475 P.2d 238 (1970). There was no error in the refusal of the trial court to give the defendant's requested instruction on the consequences of a verdict of not guilty by reason of insanity.

■ The defense argues that the trial court erred in refusing to give defense instructions which would have advised the jury that it could take into consideration all evidence that showed that the defendant was suffering from some abnormal mental or physical condition which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged. The defense also requested that the jury be instructed that if the defendant's mental condition was such as to prevent him from entertaining the specific intent involved in the offense of murder they should acquit him of such offense.

The instructions sought by the defense were nothing more than an attempt to have the trial court adopt the doctrine of diminished or partial responsibility. This position has been rejected by this court on at least two occasions. *State v. Richardson*, 110 Ariz. 48, 514 P.2d 1236 (1973), *cert. den.* 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1974); *State v. Schantz, supra.*

The defense contends that it was error for the trial court to refuse to submit the issue of manslaughter to the jury. The position of the defense is twofold: that there was sufficient evidence of heat of passion to require an instruction on voluntary manslaughter, and the defendant's mental condition precluded him from forming the necessary specific intent for murder thus reducing the crime to voluntary manslaughter.

Concerning the issue of heat of passion, the evidence showed that the defendant and the victim had been antagonistic to each other for several months. On the day of the homicide the victim had made insulting remarks about the defendant and his relationship with his daughter. The defendant made threats, left the campus where the

encounter had occurred, drove home, obtained his revolver and returned to the campus to search for the victim. The defendant had concealed the weapon in his briefcase and gotten into a registration line. A security guard had been advised that the defendant might be after the victim, and, when the guard saw the defendant, he asked the defendant whether he was out to get anybody. The defendant denied such an intention and maintained that he was just trying to complete his registration. The guard left after the conversation with the defendant. After the guard had left, the defendant saw the victim, drew his gun from the briefcase, and began firing the gun at the victim.

A defendant is entitled to an instruction on voluntary manslaughter if the evidence establishes that the homicide was induced by heat of passion aroused by adequate provocation. *State v. Johnson,* 112 Ariz. 17, 536 P.2d 1035 (1975). In absence of such evidence the defendant is not entitled to the instruction. *State v. Edgin,* 110 Ariz. 416, 520 P.2d 288 (1974). The heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the same facts and circumstances. *State v. Harwood,* 110 Ariz. 375, 519 P.2d 177 (1974). A defendant may not set up his own standard of conduct to justify or excuse himself because in fact his passions were aroused. *State v. Harwood, supra* ; *People v. Danielly,* 33 Cal.2d 362, 202 P.2d 18, *cert. den.,* 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1728 (1949).

The provocation which the defendant sets up consisted of words. We agree with the great weight of authority that words alone are not adequate provocation to justify reducing an intentional killing to manslaughter.

"... Accordingly, it is the general rule that mere language, however aggravated, abusive, opprobrious or indecent, whether directed at the slayer personally or spoken concerning his female relative, is not sufficient provocation to reduce a killing committed with a deadly weapon from premeditated murder to manslaughter." 40 Am.Jur.2d Homicide § 64.

Additionally, there appears to have been sufficient time intervening between the provocation and the killing so that the passion of a reasonable person would have cooled and reason resumed its sway.

The defense argues that the crime of manslaughter should have been submitted to the jury because there was evidence that the defendant's mental condition prevented him from forming the specific intent required for first-degree murder. The defense argues that evidence of voluntary intoxication may be considered to determine whether an accused could form specific intent (A.R.S. § 13–132; *State v. Contreras,* 107 Ariz. 68, 481 P.2d 861 (1971); *State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974)); therefore the Equal Protection clause of the Fourteenth Amendment requires that similar treatment be given to mental illness and specific intent. A similar argument was advanced and rejected in *Wahrlich v. Arizona,* 479 F.2d 1137 (9th Cir. 1973), *cert. den.,* 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973).

The two conditions are sufficiently different to justify different treatment in classification. Generally a legislative classification will be upheld if it does not involve invidious discrimination of fundamental rights and has some rational basis. *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Voluntary intoxication is not a defense to crime. Insanity which meets the legal test is a defense to crime. Intoxication, regretfully, is a part of common human experience. Jurors can understand and apply evidence of the degree of intoxication to determine the intent or lack of intent with which an accused acted. This cannot be said of the degrees of mental illness. The legislature has classified the two subjects differently, and we believe there is a rational basis for the distinction. The trial court was correct in refusing to submit the crime of manslaughter to the jury on the defend

ant's theory of lack of intent due to mental illness.

 The final matter for consideration is the death sentence imposed in this case. We have upheld the constitutionality of the death penalty statute in *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976). We have specifically affirmed the death penalty on the third aggravating circumstance which provides: "In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977). There is no question that the third aggravating circumstance was present. The defendant shot the victim in a place crowded with college students, and one of the defendant's shots did in fact wound one of those students.

The superior court found no mitigating factors. In our independent review of the case we conclude that the trial judge was in error. The evidence presented on the question of the defendant's mental condition proved the first mitigating circumstance set forth in A.R.S. § 13–454(F):

"His capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."

The evidence is sufficiently persuasive for us to conclude that the defendant's mental condition was a substantial factor in causing the death of the victim. *See State v. Richmond, supra.* The defendant's capacity to control his conduct was significantly impaired. In our judgment this mitigating circumstance is substantial enough to call for leniency.

The sentence of death heretofore imposed is set aside, and pursuant to our authority in A.R.S. § 13-1717, the defendant's sentence is reduced to life imprisonment.

CAMERON, C. J., STRUCKMEYER, V. C. J., GORDON, J., and HAIRE, Judge, Division One, Court of Appeals, concur.

NOTE: Justice JACK D. H. HAYS did not participate in the determination of this matter and Judge LEVI RAY HAIRE, Division One, Court of Appeals, sat in his stead. Justice FRANK X. GORDON, Jr. participated in the final determination of this matter in the place and stead of Retired Justice LORNA E. LOCKWOOD.