THE PEOPLE OF THE TERRITORY OF GUAM

v.

JOHN C. DELA ROSA, Defendant

Criminal Case No. 116F-78

Superior Court of Guam

August 16, 1978

ABBATE, *Presiding Judge*

### DECISION

This matter comes before the Court on defendant's Motion In Limine. The motion was heard on August 8, 1978, and decision was reserved.

Defendant seeks to prevent the introduction of evidence concerning, or references to, the frame of a certain Bernardelli semi-automatic pistol, serial number 46362, as the weapon allegedly used by the defendant to perpetrate the crimes for which he is being tried herein.

The Bernardelli frame in question was found in the vicinity of the Maina Reservoir. The serial number, which had been filed off, was raised. Using this restored serial number, the firearm registration card for the weapon was traced. The description on the registration card stated that the weapon was a Bernardelli pistol, model 90, .22 caliber. The Government purchased and test-fired the same model and caliber Bernardelli pistol, after which the chief criminalist for the Department of Public Safety then compared the test-fired shell casings with shell casings found at Two Lovers Point and at the Texiera residence. His analysis was as follows:

The markings on the casings are consistent, which leads me to believe that a Bernardelli could have fired those casings that were

recovered from the Texiera house and also from Two Lovers Point. Grand Jury Transcript, May 26, 1978, page 23.

The characteristics of the firing pin were so unique, they were so outstanding that there's no way, in my opinion, that I can find another gun that would give the same markings that I found with those comparisons, . . . What I'm saying is the markings are so unique that no other weapon could have fired those that I matched. Grand Jury Transcript, May 26, 1978, pages 28, 29.

A comparison was also made between the slugs from the purchased Bernardelli and slugs recovered from the bodies of the two Japanese women during autopsy. The chief criminalist found that "the refiling characteristics, that is the width of the land and the width of the groove are consistent again with the Bernardelli." Grand Jury Transcript, May 26, 1978, page 25.

■ The basis of defendant's motion is his contention that the introduction into evidence of the Bernardelli frame will have a "prejudicial effect on the minds of the jurors that cannot be erased by the defense, irrespective of the Government's inability to state with a legal certainty that the .22 caliber shell casings found at Two Lovers Leap were ejected by the pistol alleged to be the murder weapon." *However, legal certainty is not the standard which must be met for the introduction of evidence in a criminal case. Rather, evidence must generally only be probative in order to be admissible.* The court in *People v. Lindsay*, 227 C.A.2d 482, 38 Cal. Rptr. 755 (1964), enunciated this rule as follows:

The general tests of the admissibility of evidence in a criminal case are . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? 227 C.A.2d at 498.

Referring specifically to firearm identification, McCormick has written:

It has long been recognized by the courts that the jury deciding questions of identification operates on the basis not of unattainable absolute certainty, but of probability. McCormick, McCormick on Evidence, Sec. 204 (2d ed., 1972).

■ Probative ballistic evidence is generally admissible. The degree of its probativeness is not determinative of its admissibility, but rather of the weight to be given to the evidence by the jury. The court in *State v. Thomas*, 489 P.2d 1310 (1971), stated this rule as follows:

> There is no requirement that weapons or bullets offered in evidence be positively identified as those used in the perpetration of a crime. The admission of such evidence is within the sound discretion of the trial court and any objection to the lack of positive identification goes to the weight of the evidence rather than to the admissibility of the article. 489 P.2d at 1313.

In *State v. Hatton*, 522 P.2d 64 (1974), an expert testified that it was impossible to determine whether the bullet fragments removed from the victim's head had been fired from the alleged murder weapon because the fragments were too distorted to reveal characteristics. Notwithstanding this, the expert was permitted to testify that the pistol was capable of firing bullets of the type used in the murder, the court finding that any objection to the lack of positive identification went to the weight of the evidence rather than to its admissibility.

In *State v. Krummacher*, 523 P.2d 1009 (1974), an unusual firearm and bullet had been used in the crime and the defendant had had access to that particular type of weapon. The weapon itself was never recovered. The court permitted the introduction of neutron activation analyses, conducted to determine if the fatal bullets could have been from the same manufacturer's batch as the bullets found in the defendant's possession. Defendant contested the sufficiency of the evidence used in determining if the bullets were from the same batch. On appeal, the court stated:

[I]t is a matter that goes to the evidence's convincing power rather than to its admissibility. . . . All of the weaknesses and strengths of the State's analyses were fully disclosed by the expert testimony from both sides and the jury had an adequate opportunity to give the testimony the weight it merited. While we believe the convincing power of the evidence was not very great, it nevertheless had some probative value and was admissible. 523 P.2d at 1017.

In *State v. Edgin*, 520 P.2d 288 (1974), the court upheld the admissibility of a ballistic expert's testimony, despite his having testified that he could not positively say that the bullets came from the appellant's gun, but only that the appellant's gun could not be eliminated as the murder weapon. The *Edgin* court reiterated that the fact that the expert testimony did not establish a probability went merely to the weight of the testimony, rather than to its admissibility. See *Edgin*, supra, at 294.

Defendant's position is that the comparison tests which were conducted by the chief criminalist do not support the inference that the Bernardelli pistol frame found in the vicinity of the Maina Reservoir is part of the murder weapon. As authority, defendant cites from *Edwards v. State*, 83 A.2d 578, 26 A.L.R.2d 874, 881 (1951), which states in pertinent part:

The testimony now in question is not discredited by the circumstances that the comparison of the two cartridge cases which had been exposed to the elements, with the test cartridge supported the inference that could not be drawn from comparisons of the two alone.

Defendant's argument is not persuasive. In *Edwards*, the two cartridge cases which had been exposed to the elements were found respectively in appellant's background and near the scene. Expert testimony explained why an inference could not be drawn from a comparison of the two alone:

Everytime a weapon fires a cartridge case, the firing pin may impress to different depths. Therefore, the cartridge case will pick up additional marks on a cartridge case in which the firing pin makes a deep impression as contrasted with one in which a shallow impression is made. So that an insufficient number of microscopic marks might be present on one cartridge case from a certain weapon for comparison with another cartridge case fired from the same weapon. I examined the specimen when it was originally submitted as Q-12 and found there were very few microscopic marks in the firing pin impression. At that time I concluded they were too few for comparison with another cartridge case. However, when I received the weapon and fired the test cartridge case from it, I found on this cartridge case microscopic marks which were the same as microscopic marks I found on the cartridge case submitted to me as having been recovered in Edwards' yard, indicating that that cartridge case . . . was fired from this particular weapon. 26 A.L.R.2d at 882.

Thus, the Court would not have permitted an inference from a comparison of the two cartridges because there were too few microscopic marks in the firing pin impression to compare the two. *Edwards* did not establish that only shell casings test-fired by the alleged murder weapon could be used for comparison.

■ Based on *Hatton, Krummacher, Edgin* and *Edwards*, this Court finds that evidence concerning the Bernardelli frame, serial number 46362, is sufficiently probative of the issue of the identities of the alleged murder weapon to allow its admission into evidence.

Defendant's motion is denied.

SO ORDERED.