Robert Lee HENSLEY, Petitioner–
Appellant,

v.

Roger CRIST, Warden;  Grant Woods,
Attorney General, Respondents–
Appellees.

No. 94–16601.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1995.

Memorandum Aug. 11, 1995.

Order and Opinion Oct. 3, 1995.

Tonya J. McMath, Phoenix, Arizona, for petitioner-appellant.

Colleen L. French, Assistant Attorney General, Phoenix, Arizona, for respondents-appellees.

Before CHOY, POOLE, and KLEINFELD, Circuit Judges.

## ORDER

The Memorandum disposition filed on August 11, 1995, is redesignated as an authored Opinion.

## OPINION

CHOY, Circuit Judge:

Appellant Robert Lee Hensley ("Hensley") appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his 1982 conviction of two counts of first-degree murder, one count of attempted first-degree murder, and armed robbery. Hensley's challenge is based upon ineffective assistance of counsel.

### I

Hensley was indicted for two counts of first-degree murder, one count of attempted first-degree murder, one count of armed robbery, and one count of kidnapping on March 17, 1981 in connection with an armed robbery at the Tin Horn Saloon in Phoenix, Arizona on January 26, 1981. The Maricopa County Superior Court appointed counsel to represent Hensley on these charges and joined Hensley's case with those of co-defendants, Richard Cihak ("Cihak") and Robert Paul Berndt ("Berndt"). The superior court also ruled that two confessions made by Hensley to various investigating officers were admissible at trial.

On February 2, 1982, Hensley submitted his case for decision on stipulated facts, waiving his right to a jury trial. Hensley's decision to waive his legal right was based upon his counsel's advice to submit the case in documentary form. The strategy behind his

counsel's advice was later revealed: Hensley's counsel believed that the superior court had erred in admitting his client's incriminating statements and thought that the conviction would be reversed on appeal. He predicted that at the subsequent trial after reversal, the State would be unable to locate its key witnesses, who were transients, and as a result, would have a tougher time proving its case. In the counsel's opinion, it was unwise initially to go to trial because a trial would memorialize the testimony of the two key witnesses.

The trial judge carefully questioned Hensley in order to ascertain that Hensley was waiving his right to a jury trial voluntarily and knowingly. Satisfied by Hensley's answer that he was giving up his legal right because it was in his best interest, the trial judge accepted Hensley's waiver, finding the waiver to be knowing, intelligent, and voluntary. On March 3, 1982, upon consideration of the stipulated facts, the trial judge found Hensley guilty of two counts of first-degree murder, one count of attempted first-degree murder, and armed robbery.

On April 1, 1982, the superior court held that the stipulated facts submitted for determination of guilt or innocence could be used also to establish aggravating circumstances at the sentencing phase. Hensley was then sentenced to death on both first-degree murder convictions and to consecutive 21-year terms of imprisonment on the armed robbery and attempted first-degree murder convictions.

On June 30, 1983, the Arizona Supreme Court affirmed Hensley's conviction, finding that although Hensley's confessions were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the confessions were nonetheless voluntary. *State v. Hensley,* 137 Ariz. 80, 669 P.2d 58, 66 (1983) (en banc) (*"Hensley I"*). Furthermore, the court ruled that the admission of the confessions constituted harmless error because of the overwhelming amount of evidence pointing to Hensley's guilt. *Id.* at 66–67. The Arizona Supreme Court, however, vacated Hensley's death sentences on the ground that the written materials submitted for determination of Hensley's culpability could not be used for sentencing purposes. *Id.* at 68. On remand, the superior court, without considering the stipulated facts, again sentenced Hensley to death on each of the first-degree murder convictions. The sentence was later affirmed by the Arizona Supreme Court. *State v. Hensley,* 691 P.2d 689, 695 (Ariz.1984) (en banc) (*"Hensley II"*).

On April 29, 1985, Hensley filed his first petition for post-conviction relief alleging ineffective assistance of counsel. Hensley alleged that his trial counsel rendered ineffective assistance by (1) advising him to waive his right to a jury trial and to permit the superior court to decide the case on stipulated facts; (2) allegedly informing Hensley that the Arizona Supreme Court would reverse the conviction if Hensley were convicted; (3) failing to inform Hensley of the possibility that the Arizona Supreme Court would affirm the conviction; (4) failing to inform Hensley about the harmless error doctrine; (5) failing to inform Hensley that incriminating statements obtained in violation of *Miranda* and *Edwards* may nevertheless be admissible; (6) failing to inform Hensley regarding the effect of the other evidence contained in the stipulated facts; and (7) failing to present mitigating circumstances including his intoxication. Hensley alleged that had he been fully informed, he would not have waived his right to a jury trial and that there was a substantial likelihood that he would have been convicted of only second-degree murder.

The superior court conducted an evidentiary hearing and found that Hensley had made an independent decision to submit the case in documentary form with full knowledge that a reversal of his conviction was not guaranteed. On February 26, 1986, the superior court denied, in part, Hensley's petition, holding that Hensley's counsel rendered effective assistance during the culpability phase of the proceeding. The court, however, vacated Hensley's death sentences and ordered resentencing because it found there was a possibility that Hensley's intoxication at the time of the crime constituted a significant mitigating circumstance.

In preparation for the resentencing, the court appointed Dr. Kevin Buckley to evaluate Hensley's mental condition. Dr. Buckley found that Hensley was able to understand the nature of the proceedings and to assist counsel in his defense. Dr. Buckley further opined that Hensley was able to appreciate the nature of his behavior at the time of the crime.

At the pre-sentence hearing on November 24, 1987, Hensley presented the testimony of Drs. Robert Clark and George O'Connor. Dr. Clark, without having personally examined Hensley, opined that Hensley had been suffering from a chemical dependency at the time of the crime which *may* have affected his ability to distinguish right from wrong. Dr. Clark could not conclusively state, however, that Hensley was suffering from such a reaction at the time of the crime.

After a personal examination, Dr. O'Connor diagnosed Hensley as a schizophrenic and opined that in 1981, Hensley was an untreated, chemically-dependent schizophrenic who was intoxicated at the time of the crime. Like Dr. Clark, however, Dr. O'Connor could not specify whether Hensley had the ability to appreciate the nature of his offenses at the time of the crime.

On November 27, 1987, the superior court, for the first time taking Hensley's intoxication into account as a mitigating factor, imposed life imprisonment for each of the murder convictions. The Arizona Supreme Court affirmed Hensley's life sentences on May 2, 1989.

Hensley filed a second petition for post-conviction relief on February 24, 1988, alleging ineffective assistance of counsel for failing to present an insanity defense at trial. The superior court, upon consideration of the testimony of Drs. Clark, O'Connor, and Buckley, denied Hensley's petition for post-conviction relief. The superior court held that Hensley could not show that the outcome of the trial would have been any different if Hensley's counsel had presented an insanity defense. The superior court found significant that neither Drs. Clark nor O'Connor opined with any certainty that Hensley was unable to appreciate the nature of his acts at the time of his offenses, while

Dr. Buckley did so find. The Arizona Supreme Court denied Hensley's petition to review this ruling on October 25, 1989.

Hensley filed a petition for a writ of habeas corpus on August 6, 1992 alleging ineffective assistance of counsel. On October 27, 1993, a federal magistrate judge filed a report and recommendation finding that Hensley's counsel had not rendered ineffective assistance and recommending denial of Hensley's petition. On August 5, 1994, the district court dismissed Hensley's petition for a writ of habeas corpus. Hensley filed a timely notice of appeal on September 6, 1994. The district court issued a certificate of probable cause on September 13, 1994. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## II

■ Hensley contends that his counsel rendered ineffective assistance by recommending the submission of his case on stipulated facts and by failing to explore the insanity defense. We review de novo the district court's denial of a petition for a writ of habeas corpus. *Sullivan v. Borg,* 1 F.3d 926, 927 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994).

### A.

■ The advice of Hensley's counsel to submit the case on stipulated facts in order to avoid preserving the testimony of two key State witnesses is a tactical decision that does not constitute ineffective assistance of counsel. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira–Alameda,* 815 F.2d 1251, 1253 (9th Cir.1987) (quoting *United States v. Hamilton,* 792 F.2d 837, 839 (9th Cir.1986)). *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), sets out a two-pronged test for evaluating an ineffective assistance of counsel claim. *See also United States v. Solomon,* 795 F.2d 747, 749 (9th Cir.1986). In order to demonstrate that his counsel was constitutionally ineffective, Hensley must

show that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. In addition, Hensley must show that the deficient performance prejudiced the defense and made the trial results unreliable. *Id.* at 687, 104 S.Ct. at 2064. In evaluating the second prong of the test, we assess whether "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068 (emphasis added).

■ Hensley argues that his trial counsel rendered ineffective assistance by advising him to submit his case on stipulated facts without informing him of the contents of the stipulated facts, without explaining the legal intricacies involved in determining the admissibility of his confessions, and without apprising him of the harmless error doctrine. Considering the sheer weight of the evidence against Hensley, his counsel's advice to submit the case on stipulated facts, in the hopes of a reversal, is not objectively unreasonable. There was a good possibility that Hensley's conviction might be reversed, and if the gamble had paid off and the State were unable to locate the transient witnesses at the subsequent trial, Hensley would have been in a much better position. Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel. *Hughes v. Borg,* 898 F.2d 695, 703 (9th Cir. 1990). Thus, Hensley fails to satisfy the first prong of the *Strickland* test.

Likewise, Hensley cannot show that there is a reasonable probability that the result of the case would have been different if he had proceeded to trial. Hensley had confessed to law enforcement officers and various others who would have testified against him at trial. Furthermore, the State's key witnesses would have been available to testify at the first trial. It is more likely than not that Hensley would have been convicted had he gone to trial. The likelihood of Hensley's conviction is demonstrated by the conviction of Berndt, Hensley's co-defendant, of two counts of first-degree murder, one count of attempted first-degree murder, armed robbery, and kidnapping. It is highly unlikely

that Hensley, who had pulled the trigger by all accounts, would have fared better than Berndt, who had merely taken the money from the cash register during the robbery.

■ Next, Hensley challenges the constitutionality of his waiver by asserting that his waiver could not have been "knowing" when it was made in ignorance of all of the appellate ramifications. Hensley attempts to stretch the definition of "knowing" too far. This court has found a knowing waiver of the right to a jury trial where the trial judge thoroughly explained the nature of a jury trial to the defendant, carefully informed the defendant that he was giving up his rights to confront witnesses and to offer evidence, explained the maximum possible penalty, and questioned the defendant to ascertain that he understood the scope of the right he was waiving. *Ferreira–Alameda,* 815 F.2d at 1253; *see also United States v. Lyons,* 898 F.2d 210, 215 (1st Cir.) (a knowing waiver requires that a defendant be fully informed about the right he is waiving), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990).

An examination of the record indicates that Hensley was fully aware of the scope of the right he was waiving and did so as a strategic decision. In order to establish the voluntariness of the waiver, the superior court carefully questioned Hensley, explaining to Hensley the maximum sentences which may be imposed upon him, elaborating at length upon the right to a jury trial, and finally probing Hensley as to his reason for waiving his right. Hensley stated that he was giving up his legal right to a jury trial because he believed that it was in his best interest.

### B.

■ Because Hensley concedes that his intoxication, standing alone, does not provide a defense to charges of first-degree murder, we consider only whether Hensley's trial counsel rendered ineffective assistance by failing to assert an insanity defense. Hensley cites to *Mauldin v. Wainwright,* 723 F.2d 799 (11th Cir.1984), to support his contention that his counsel's failure to investigate the insanity defense amounted to ineffective assistance. *Mauldin,* however, is clearly distinguishable from the present case. The sole

defense theory put forth by the defense counsel in *Mauldin* was one of insanity, yet counsel failed to fully investigate the defendant's medical history. *Id.* at 800. Here, counsel's failure to investigate an insanity defense, given Hensley's record, was not objectively unreasonable.

At the outset, it is difficult to determine whether Hensley's counsel in fact considered the insanity defense and rejected it in favor of his strategy to submit the case on stipulated facts because Hensley never obtained his counsel's testimony on the matter. Even if Hensley could somehow make a showing that his counsel never considered the insanity defense, Hensley still fails to present any evidence showing that his counsel should have made a threshold determination that an insanity defense was appropriate.

■ Hensley asserts that his record documents a long history of mental illness and alcohol abuse and argues that his record should have prompted his counsel to explore the possibility of an insanity defense. However, the only legible document to which Hensley cites in support is a Denver Police Department record, dated February 7, 1973, which indicates that Hensley was mentally disturbed and posed a danger to himself and others. The police emergency mental illness report, however, also explicitly states that Hensley had not received previous psychiatric care and that he had never attempted suicide.

The police report alone is not sufficient to put Hensley's counsel on notice. Notice to counsel that an insanity defense may be appropriate requires a stronger indication of mental illness in the client's record such as past institutionalization or highly unusual behavior. *See e.g. Bouchillon v. Collins,* 907 F.2d 589, 596–97 (5th Cir.1990) (ineffective assistance of counsel where counsel failed to investigate his client's mental health history when the only available defense was insanity and he knew that his client had been institutionalized for mental problems several times in the past); *Evans v. Lewis,* 855 F.2d 631, 636 (9th Cir.1988) (ineffective assistance of counsel where counsel failed to investigate an insanity defense when he knew his client had a history of mental problems, including a previous suicide attempt and incarceration in a state mental facility for inmates); *Wood v.*

*Zahradnick,* 430 F.Supp. 107, 111–12 (E.D.Va.1977) (the bizarre nature of the crime, his client's lack of recollection, and counsel's personal observation of his client's unusual behavior were sufficient to put counsel on notice that an insanity defense might be plausible), *aff'd,* 578 F.2d 980 (4th Cir. 1978).

Hensley fails to show that his counsel was put on notice to explore the insanity defense. Even if Hensley could show that his counsel was put on notice, he nevertheless fails to satisfy the second prong of the *Strickland* test: Hensley cannot demonstrate with reasonable probability that the trial outcome would have been different if the insanity defense had been presented.

■ Hensley contends that the expert testimony of Drs. Clark and O'Connor, obtained at the second resentencing hearing, sufficiently establishes reasonable probability of a different outcome if an insanity defense had been presented. An insanity defense is viable if, at the time a person committed the offense, he was suffering from such a mental disease that he did not know the nature and quality of his acts or if he did know, he did not know what he was doing was wrong. *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054, 1059 (1977) (en banc).

■ In support of an insanity defense, Hensley cites to Dr. O'Connor's testimony in which he identifies Hensley as an untreated schizophrenic. Dr. O'Connor's testimony, however, expounds upon schizophrenics generally and never renders a specific opinion regarding Hensley's condition at the time of the crime. Likewise, Dr. Clark opined that Hensley was chemically dependent in 1981 but failed to render a specific opinion on Hensley's mental condition at the time of the crime. Dr. Clark, in fact, opined that at the time of the crime, Hensley was probably not suffering from a blackout, which would have made him unable to distinguish right from wrong or to know the nature of his acts. Dr. Buckley, the only doctor to articulate an express opinion on Hensley, stated that Hensley was able to appreciate the nature of his behavior at the time he committed his offenses. Hensley fails to demonstrate, by a preponderance of the evidence, a reasonable probability that the outcome would have been

different if Hensley's trial counsel had investigated the insanity defense.

### III

Hensley, with the advice of his trial counsel, made a tactical decision to waive his right to a jury trial, a decision which was not objectively unreasonable in light of the circumstances. In making that decision, Hensley was aware of the possibility that his conviction might not be reversed on appeal. Therefore, his trial counsel's alleged failure to inform Hensley about the contents of the submitted documents, as well as his alleged failure to discuss with Hensley the legal intricacies of determining the voluntariness of confessions and the applicability of the harmless error doctrine, did not constitute ineffective assistance of counsel.

Furthermore, Hensley's trial counsel did not provide ineffective assistance by failing to investigate the insanity defense where his counsel was not put on notice that an insanity defense might be appropriate and where Hensley could not establish with reasonable probability that a different trial outcome would have resulted.

**Affirmed.**