195 N.J. Super. 285 (1984)
478 A.2d 1249
STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS PRICE III, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided January 11, 1984.
*290 Frank Graves and Simon Rosenback, Assistant Prosecutors, for plaintiff (Alan A. Rockoff, Middlesex County Prosecutor, attorney).
John R. Piepenbrinck, Assistant Deputy Public Defender, for defendant (Bradley Ferencz, Deputy Public Defender, attorney).
*291 CONLEY, J.S.C.
An indictment was filed on June 28, 1983 in which defendant was charged with one count of a knowing or purposeful murder of Keith Vanderhoof on May 5, 1983 contrary to N.J.S.A. 2C:11-3(a)(1) or (2) and one count of possession of a handgun with purpose to use it against another contrary to N.J.S.A. 2C:39-4(a). Defendant was originally arrested for the murder on May 6, 1983. He was arraigned on the indictment on June 30, 1983.
Following arraignment, the prosecutor determined the case qualified as a capital offense and served defendant with notice of the particular aggravating factor [N.J.S.A. 2C:11-3c(4)(b)] the State intends to rely upon. R. 3:13-4(a) provides that notice of aggravating factors should be served at time of arraignment. Notice in this case was not served until September 15, 1983 and the prosecutor has made no application to enlarge the time for good cause.
Defendant has moved to dismiss the indictment and strike the aggravating factors on various constitutional and nonconstitutional grounds. With respect to the constitutional assertions, defendant contends that N.J.S.A. 2C:11-3 violates the United States Constitution because it does not sufficiently limit the crimes punishable by death, fails to provide an unambiguous standard by which a jury can decide the applicability of the death penalty, mandates a sentence of death if the jury finds an aggravating factor exists and is not outweighed by any mitigating factors, places significant limitation upon a defendant's right to contest the penalty phase and does not provide for an adequate appellate review. Defendant contends that N.J.S.A. 2C:11-3 violates the New Jersey Constitution because it allows a form of punishment which is cruel in light of contemporary standards of decency, because the death penalty will inevitably be applied in a discriminatory and arbitrary manner, because the death penalty has no deterrent effect and serves no legitimate purpose, because the sentencing provision limits the jury's *292 function and because the aggravating factors are not presented to the Grand Jury.[1] Defendant further contends the particular aggravating factor, if construed to apply to this case, violates the due process and equal protection provisions of both the federal and state constitutions. Defendant also argues that the particular aggravating factor must be stricken and the death penalty removed because the prosecutor has not given timely notice of his intention to seek the death penalty.
In order to place defendant's federal constitutional arguments in perspective, it is necessary to review the relevant death penalty decisions of the Supreme Court of the United States, for both the judicial invalidation of New Jersey's prior death penalty and the legislative fashioning of the present death penalty law have been guided by these decisions. See State v. Funicello, 60 N.J. 60, 67 (1972), cert. den. 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972); State v. Bass, 189 N.J. Super. 445, 451 (Law Div. 1983).
In both Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court of the United States found both the Georgia and the Florida death penalty statutes constitutional, and held that the imposition of capital punishment for the crime of murder where a life has been taken deliberately by the offender was not per se violative of the Eighth and Fourteenth Amendments. In doing so the Court noted that:

*293 in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.
....
This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. `[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people....' [428 U.S. at 175, 96 S.Ct. at 2926, 49 L.Ed.2d at 876]
And, after evaluating arguments of "standard of decency" and studies and statistical data[2] relating to the worth of the death penalty as a deterrent, the Supreme Court said:
The value of capital punishment as a deterrent of crime is a complex factual issue the resolution of which properly rests with the legislatures, which can evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts.... [428 U.S. at 186, 96 S.Ct. at 2931, 49 L.Ed.2d at 882]
The necessity and propriety of capital punishment, therefore, is peculiarly within the province of the respective state legislatures.
The Supreme Court did, though, caution that capital punishment is an extreme sanction, suitable only to the most extreme of crimes. Because of its uniqueness, the death penalty cannot be imposed under a statutory scheme that creates a substantial risk that the death penalty would be inflicted in an arbitrary and capricious manner. Gregg, supra, 428 U.S. at 188, 96 S.Ct. at 2932, 49 L.Ed.2d at 883. Thus, to meet constitutional muster, a state death penalty law must carefully define the crimes for which death may be a sentence. It must direct the sentencer's discretion by clear and objective standards, providing specific and detailed guidance, and it must provide for an appellate process by which a sentence of death may be rationally reviewed. Godfrey v. Georgia, 446 U.S. 420, *294 428, 100 S.Ct. 1759, 1764-1765, 64 L.Ed.2d 398, 406 (1980); Gregg v. Georgia, supra, 428 U.S. at 206-207, 96 S.Ct. 2909 at 2940-2941, 49 L.Ed.2d at 893; Proffitt v. Florida, supra, 428 U.S. at 248-253, 96 S.Ct. 2960 at 2964-2967, 49 L.Ed.2d at 920-923. Further, the sentencing procedure must allow any mitigating factors to be considered (Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)) and the death sentence cannot be mandatorily imposed upon conviction for murder (Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976)). See also State v. Bass, 189 N.J. Super. 445, 453-454 (Law Div. 1983).
As did the Georgia and Florida death penalty statutes analyzed and upheld in Gregg and Proffitt, the New Jersey death penalty statute provides a facially constitutional sentencing scheme. Conduct constituting the offense of murder is clearly defined in N.J.S.A. 2C:11-3a(1), (2) and (3). It is only a conviction under N.J.S.A. 2C:11-3a(1) or (2) which triggers the potential for the death penalty.[3] Further, the death penalty provisions of N.J.S.A. 2C:11-3c are raised only where the murder under 3a(1) or (2) is committed by defendant's own conduct or where defendant as an accomplice procures the murder by payment or promise of payment of anything of pecuniary value. If the death penalty provisions are applicable, a separate sentencing proceeding is required. Where defendant has been tried by a jury, the sentencing proceeding is conducted by the judge who presided at trial and before the same jury that determined defendant's guilt, except that for good cause a new jury may be empanelled. Where the defendant has entered a *295 guilty plea or has been tried without a jury, the sentencing proceeding is to be conducted by the same judge and before a jury empanelled for that purpose. A sentencing proceeding may be conducted without a jury on defendant's motion and with consent of the prosecutor. N.J.S.A. 2C:11-3c(1). At the sentencing proceeding, the State has the burden of proving beyond a reasonable doubt the existence of the aggravating factor(s) relied upon. The defendant has the burden of producing evidence of the existence of any mitigating factors. Both shall be permitted to rebut any evidence presented by the other and present argument as to the adequacy of the evidence to establish the existence of an aggravating or mitigating factors. N.J.S.A. 2C:11-3c(2). The jury, or if there is no jury, the court, must return a special verdict setting forth in writing the existence or non-existence of each of the aggravating and mitigating factors involved. If any aggravating factor is found to exist, the verdict must state whether it is or is not outweighed by any one or more mitigating factors. If the jury, or if no jury, the court, finds that any aggravating factor exists and is not outweighed by one or more mitigating factors, then the court shall sentence the defendant to death. If the jury, or if no jury the court, finds that no aggravating factor exists or that any aggravating factors which exist are outweighed by one or more mitigating factors, or if the jury is unable to reach a unanimous verdict, the death penalty will not be applicable. N.J.S.A. 2C:11-3c(3). There are eight aggravating factors enumerated in N.J.S.A. 2C:11-3c(4) and eight mitigating factors in N.J.S.A. 2C:11-3c(5). To insure that all applicable mitigating factors can be considered by the sentencer, the eighth mitigating factor is "[a]ny other factor which is relevant to the defendant's character or record or to the circumstances of the offense." N.J.S.A. 2C:11-3c(5)(h). Finally, N.J.S.A. 2C:11-3e directs that every judgment of conviction resulting in a sentence of death may be appealed pursuant to court rules to the Supreme Court of New Jersey and that that court shall determine whether the sentence is disproportionate to the penalty *296 imposed in similar cases, considering both the crime and the defendant.
These provisions make plain that New Jersey, like Florida and Georgia, has fashioned a death penalty scheme which requires:
an informed, focused, guided, and objective inquiry into the question whether [defendant] should be sentenced to death. If a death sentence is imposed, the sentencing authority articulates in writing the statutory reasons that led to its decision. Those reasons, and the evidence supporting them [will be] conscientiously reviewed by a court which, because of its statewide jurisdiction, can assure consistency, fairness, and rationality in the evenhanded operation of the state law ... [T]his system serves to assure that sentences of death will not be `wantonly' or `freakishly' imposed.... [Proffitt v. Florida, supra, 428 U.S. at 259-260, 96 S.Ct. at 2970, 49 L.Ed.2d at 927]
Defendant nonetheless contends that under the federal constitution N.J.S.A. 2C:11-3 is facially unconstitutional because the nature and scope of the aggravating factors contained in N.J.S.A. 2C:11-3c(4) are so broad as to allow for every intentional murder to qualify as a death case. Clearly, New Jersey's death statute does not apply to all convictions for murder. Moreover, precisely the same contention has recently been rejected in State v. Bass, supra, 189 N.J. Super. at 454-455. And, as noted in that case, the death penalty statutes of both Georgia and Florida containing aggravating factors similar in scope and number to that of New Jersey were upheld in Gregg and Proffitt (the Georgia statute contains ten aggravating factors and the Florida statute contains eight. Ga. Code Ann., § 27-2534.1(b); Fla. Stat. Ann., § 921.141(5)).
Defendant next contends that N.J.S.A. 2C:11-3 violates the federal constitution because it mandates the death penalty. While it is true that the death sentence is imposed if the jury finds that an aggravating factor(s) exists and is not outweighed by any mitigating factor(s), the imposition of the death sentence occurs only after the jury considers the mitigating factors presented, thus taking into consideration the character and record of the individual defendant and the circumstances of the particular offense so as to determine the appropriateness of the death penalty to the particular case. This is hardly the automatic *297 imposition of death found unconstitutional in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). And, though the New Jersey statute, unlike the Georgia statute but like the Florida statute, does not contain a specific provision authorizing the jury to recommend a life sentence as opposed to death based upon consideration of mercy, the mitigating factors that may be presented to and considered by the jury upon which a jury could find the death sentence inapplicable are extensive including such factors as defendant's being under the influence of emotional or mental disturbance, the defendant's age, mental disease or defect impairing defendant's capacity to appreciate the wrongfulness of his conduct, unusual or substantial duress, no prior criminal activity, and "any other factor which is relevant to the defendant's character or record or to the circumstances of the offense."[4] Moreover, it has never been held that a mercy provision is a constitutional requirement and, indeed, the Florida statute upheld in Proffitt did not contain a mercy provision and did not contain a "catch-all" mitigating factor similar to New Jersey's eighth mitigating factor. See State v. Bass, supra, 189 N.J. Super. at 455.
*298 Defendant further contends the New Jersey statute violates the federal constitution because it imposes upon the defendant the burden of proof in connection with the weighing of aggravating and mitigating factors. This argument is based upon defendant's contention that if the aggravating and mitigating factors are found by the jury to be equal, the statute mandates the death penalty, i.e., the State need not prove that the aggravating outweigh the mitigating. The statute does not expressly so provide. To the contrary, the only burden imposed upon the defendant is the burden of producing the existence of any mitigating factors whereas the burden imposed upon the State is to prove beyond a reasonable doubt the existence of aggravating factors. N.J.S.A. 2C:11-3c. Though the statute is silent as to burden of proof regarding weighing of the aggravating and mitigating factors, discussions at the legislative public hearing on Senate Bill 112 clearly reflect that the intent was that the State have the burden of proof with respect to the ultimate issue, i.e., whether aggravating factors outweigh mitigating. Senate Judiciary Hearing on Senate Bill 112 (February 26, 1982,) at 11-14. See also State v. Bass, supra, 189 N.J. Super. at 456-458.
Finally, defendant asserts that the appellate review required in N.J.S.A. 2C:11-3e is inadequate to satisfy the concerns of Proffitt, and Gregg. This argument is without merit. State v. Bass, supra, 189 N.J. Super. at 459. As said there, it must be presumed that our Supreme Court will provide the type of appellate review required by the statute and the United States Supreme Court cases relating to the review of death penalty proceedings.
With respect to state constitutional assertions, defendant first argues the death penalty is unconstitutionally cruel in light of contemporary standards of decency, is unconstitutionally cruel because it will be applied discriminatorily and has no deterrence effect. These same arguments were analyzed and rejected by the Supreme Court of the United States in Gregg *299 and Proffitt in connection with the federal Eighth Amendment challenges. As noted in State v. Bass, supra, 189 N.J. Super. 460-461 there is no justification for different interpretations of state and federal law concerning capital punishment insofar as it is alleged to be constitutionally cruel and unusual punishment. See State v. Forcella, 52 N.J. 263 (1968), rev'd sub nom. Funicello v. New Jersey, 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971); State v. Funicello, 60 N.J. 60 (1972), cert. den. 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). Moreover, insofar as defendant seeks to have this court reevaluate the utility, morality and fairness of the death penalty through consideration of the studies and statistics cited in his brief, the previously cited language from Gregg recognizing such matters are for the Legislature in addition to the following observation by Chief Justice Weintraub in State v. Forcella are dispositive:
As to the question whether the death penalty serves a useful end, and its morality and fairness, these are matters which rest solely with the legislative branch of government.... [52 N.J. at 293]
Defendant further argues that the death penalty scheme requires the jury to determine and weigh the aggravating and mitigating factors but does not authorize the jury to determine the actual sentence and thus violates Art. I, par. 9 and par. 10 of the New Jersey Constitution by limiting the inherent scope of the jury's function. The short answer to this contention is that jury sentencing has never been permitted in this State and our Constitution does not require to the contrary.[5] As a practical matter, however, it is precisely the jury *300 which does determine whether the death penalty is to be imposed by performing its weighing function. Further, in the context of this argument, to the extent defendant also argues the statute is unconstitutional on state grounds because it is mandatory and/or does not provide for a "mercy" provision, what has been said in connection with defendant's similar federal constitutional argument is equally applicable to this related state law argument. See pp. 296-297, supra.
Defendant also argues that failure to present the aggravating factor(s) to the Grand Jury violates Art. I, para. 8 of the New Jersey Constitution. That paragraph with certain exceptions not applicable here, provides that "no person shall be held to answer for any criminal offense, unless on the presentment or indictment of a grand jury." An indictment must contain a written statement of the facts constituting the crime charged and sufficient statutory citation. R. 3:7-3(a). The constitutional requirement relates to indictment by Grand Jury of the offense charged not the particular sentence or punishment. There is no constitutional requirement that the Grand Jury be presented with evidence of the particular aggravating factor(s) and that the indictment itself contain specific reference thereto.
With respect to the particular aggravating factor relied upon by the prosecutor, defendant asserts that if construed and applied to the facts in this case such construction will render the aggravating factor unconstitutionally overbroad. Defendant further contends that such construction lacks rationality and is violative of equal protection. The particular aggravating factor is N.J.S.A. 2C:11-3c(4)(b) which provides:
In the commission of the murder, the defendant purposely or knowingly created a grave risk of death to another person in addition to the victim....
It is defendant's contention that this aggravating factor must constitutionally be limited to situations where a bomb or similar explosive device is used to commit a murder and in the process injures or causes a great risk of death to others, or where a *301 defendant murders a victim and causes a great risk of death to others by an "indiscriminate" act of shooting at several people in connection with the murder.[6]
An analysis of Gregg and Proffitt, as well as consideration of other states' construction of the "great risk of death to another person" factor, provides some guidance on this issue and suggests that defendant's limited construction of 11:3c(4)(b) is not constitutionally required. In Gregg and Proffitt, the Supreme Court reviewed similar aggravating factors in the Georgia[7] and Florida[8] death penalty statutes and sustained them from vagueness challenges. The court did warn in both instances that each state's respective aggravating factor was susceptible to an impermissibly overbroad construction. However, in each case it approved of the construction given the aggravating factor by the state courts. In Gregg, focusing on the language "great risk of death to more than one person," the Supreme Court approved the construction given by the Georgia courts in *302 Chenault v. State, 234 Ga. 216, 215 S.E.2d 223 (1975), the only case to which the aggravating factor had at that time been applied. In Chenault, the defendant had stood up in church, shot and killed the organist and another person and then turned and began to fire randomly into the congregation. The court compared favorably this situation with that present in Jarrell v. State, 234 Ga. 410, 216 S.E.2d 258 (1975), cert. den. 428 U.S. 910, 96 S.Ct. 3223, 49 L.Ed.2d 1218 (1976), reh'g den. 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976), in which the Georgia court reversed the finding of "great risk to more than one person" where the victim was simply kidnapped in a parking lot and then found shot dead on an isolated road. Gregg, supra, 428 U.S. at 202, 96 S.Ct. at 2939, 49 L.Ed.2d at 891. Chenault does represent a situation of an indiscriminate act of gun shooting affecting a large number of people. However, the contrast with the far different kidnap and killing of one individual, suggests a broad range of possible fact situations in which the aggravating factor could constitutionally be construed to apply. And, indeed, subsequent to Gregg, but presumably with a view towards a constitutional construction, the Georgia court construed the great risk of death to more than "one person" factor to apply where defendant and two others robbed a Seven-Eleven store. At the time of the robbery an armed guard and two employees were in the public area of the store. A struggle ensued between the guard and the robbers. The guard was killed, having been shot six times with a .32 caliber automatic revolver. While several of the robbers were also shot, no other people were hurt or threatened. However, the Georgia court concluded that "a.32 caliber automatic ... is a weapon which is normally hazardous to the lives of more than one person, when used in a public place." Jones v. State, 243 Ga. 820, 256 S.E.2d 907 (1979), cert. den. 444 U.S. 957, 100 S.Ct. 437, 62 L.Ed.2d 329 (1979), reh'g den. 444 U.S. 1027, 100 S.Ct. 694, 62 L.Ed.2d 663 (1980). The focus was upon the type of weapon used, not upon any indiscriminate shooting spree.
*303 In Proffitt, the Supreme Court approved the construction given the aggravating factor "great risk of death to many persons" by the Florida court in Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. den. 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976), reh'g den. 429 U.S. 874, 97 S.Ct. 195, 50 L.Ed.2d 157 (1976). In that case a great risk of death to many persons was found to exist where defendant had murdered two victims to avoid a surviving witness. The Florida court had also found "a great risk of death to many persons" to apply to the facts in Proffitt where the defendant killed the victim with a knife and then with his fist hit the victim's wife who had been sleeping in bed. The Supreme Court was troubled by this particular construction of the aggravating factor. See 428 U.S. at 256 n. 13, 96 S.Ct. at 2968 n. 13, 49 L.Ed.2d at 925, n. 13. However, the concern appears to stem in part at least from the fact that though the specific statutory aggravating factor refers to a great risk of death to "many persons," in Proffitt only one other person was threatened. Subsequent to Proffitt, Florida courts have refused to construe this aggravating factor to apply where only one or two other persons are present during the murder but not harmed or threatened. See Lewis v. State, 377 So.2d 640 (Fla. 1979); Kampff v. State, 371 So.2d 1007 (Fla. 1979). On the other, where two persons not the intended victims were shot during the defendant's "raging gun battle," the aggravating factor was construed to apply notwithstanding the few number of people involved. Lucas v. State, 376 So.2d 1149 (Fla. 1979).
In addition to Georgia and Florida, numerous other states contain an aggravating factor similar to New Jersey's. See e.g., State v. Blazak, 131 Ariz. 598, 643 P.2d 694 (Sup.Ct. 1982), cert. den. 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); Jones v. State, 648 P.2d 1251 (Okla.Cr.App. 1982), cert. den. 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983); State v. Johnson, 632 S.W.2d 542 (Tenn. 1982), cert. den. 459 U.S. 882, 103 S.Ct. 183, 74 L.Ed.2d 148 (1982); Miller v. State, 269 Ark. 341, 605 S.W.2d 430 (1980), cert. den. 450 U.S. 1035, 101 S.Ct. *304 1750, 68 L.Ed.2d 232 (1981); State v. Sonnier, 379 So.2d 1336 (La. 1979), 402 So.2d 650 (La. 1981), cert. den. ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). Though none of the aggravating factors in these states or their construction have been directly reviewed by the Supreme Court of the United States, it must be assumed each state has endeavored to construe and apply the aggravating factor in a constitutional manner. Construction by these states, therefore, may be considered in determining the constitutional limits upon the parameter of New Jersey's similar aggravating factor.
In Arizona, the aggravating factor has been found to exist where during the course of a robbery defendant fatally shot two people and wounded another (State v. Blazak, supra, 643 P.2d 694), where the defendant came up behind the intended victim in a crowded place, emptied his gun at him killing the victim and wounding a person standing nearby (State v. Doss, 116 Ariz. 156, 568 P.2d 1054 (Sup.Ct. 1977)), and where defendant shot three intended victims in a crowded bar, the court noting that when defendant emptied his gun at the victims he created a grave risk of death to the other people in the immediate area (State v. McMurtrey, 136 Ariz. 93, 664 P.2d 637 (1983)). On the other hand, distinguishing the crowded bar and public place in Blazak and Doss, the Arizona Supreme Court found the "other person" not within the "area of danger" where at the time of the victim's shooting the other person was in another room. State v. Clark, 126 Ariz. 428, 616 P.2d 888 (1980), cert. den. 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Where the defendant simply pointed a gun at the "other person," but thereafter proceeded with the killing of the intended victim during which there was no indication he intended to kill or harm the other person, the Arizona court found that to apply the aggravating factor to these facts would "stretch the statute to extreme length." State v. Jeffers, 135 Ariz. 404, 661 P.2d 1105 (1983).
*305 Arkansas appears to have adopted an "extreme" construction of its similar aggravating factor. See Miller v. State, supra, 605 S.W.2d 430. There the court found a knowing creation of a great risk of death to arise when the "other person" having heard shots from a store, entered it and came face to face with defendant who had just murdered the victim and who ordered the "other person" to get into the store. The "other person" instead backed out and moments later the defendant ran out with a gun.
In Oklahoma, the court construed the similar aggravating factor to apply where, following the murder, the defendant pulled a gun out of a paper sack and simply pointed it at a group of other people as he walked across the street. Hays v. State, 617 P.2d 223 (Okla.Cr.App. 1980). While this might appear to also be an "extreme stretching" of the constitutional limits of the factor, the aggravating factor has more recently been applied by the Oklahoma court to facts clearly within the constitutional parameters, i.e., mass murders. Stafford v. State, 665 P.2d 1205 (Okla.Cr.App. 1983) (defendant herded six victims into a meat freezer and opened fire at close range at all six); Davis v. State, 665 P.2d 1186 (Okla.Cr.App. 1983) (defendant fired six bullets from a .38 caliber revolver at four intended victims, killing two and wounding two); Jones v. State, supra, 648 P.2d 1251 (defendant shot three victims in a bar, killing one and wounding two).
In Louisiana, the execution of two victims lying side-by-side with six rapid rifle shots was found to constitute a single consecutive course of conduct by which defendant contemplated and caused a great risk of death to more than one person. State v. Sonnier, supra, 379 So.2d 1336, 402 So.2d 650. See also State v. English, 367 So.2d 815 (La. 1979). The aggravating factor was also found where defendant entered a bank with several customers inside with his automatic pistol drawn. He fired three shots at a security guard  two hit the guard and one hit the wall. Several of the customers had to duck and *306 were in close proximity to the security guard when defendant fired the shots. State v. Berry, 391 So.2d 406 (La. 1980), 430 So.2d 1005 (La. 1983), cert. den. 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). On the other hand, the aggravating factor was found not applicable where the defendant merely pointed his gun at the "other person" who had chased after defendant following the killing of the victim. State v. Lindsey, 404 So.2d 466 (La. 1981), 428 So.2d 420 (La. 1983). See also State v. Culberth, 390 So.2d 847 (La. 1980). And in State v. Moore, 414 So.2d 340 (La. 1982), cert. den. ___ U.S. ___, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983), the aggravating factor was found not to apply where the "other person" was the victim's child who was never threatened or in danger during the stabbing of the victim.
Of some bearing to the facts of this case is Williams v. Maggio, 679 F.2d 381 (5 Cir.1982), cert. den. ___ U.S. ___, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983), in which the federal court of appeals reviewed on constitutional grounds the imposition of the death penalty by the Louisiana court. There the defendant had robbed a store during the course of which he had killed the security guard by firing at him at point blank range. Customers were in the store at the time though there was no indication of their proximity to the murder victim. One of the aggravating factors found by the jury was a great risk of harm to more than one person. In upholding the death penalty, the Louisiana court did not rely upon that aggravating factor and thus the court of appeals found it unnecessary to review the application of the factor to the facts of the case. However, the majority opinion did comment that "whenever a sawed-off shotgun is intentionally fired around a group of persons, the risk of harm to more than one individual is created." 679 F.2d at 389, n. 7. But see dissenting opinion, 679 F.2d at 399 n. 4. The majority court of the Fifth Circuit appeared to have no constitutional difficulty with such a construction of the aggravating factor.
*307 Given the variety of fact patterns to which the "great risk of death to another person" aggravating factor has been construed to apply and given the fact that the Supreme Court of the United States has given limited guidance thus far on the proper scope of that aggravating factor, it is difficult, if not impossible, to discern the entire scope of its constitutional parameters. What is evident is that the facts must include a knowing or purposeful state of mind vis-a-vis the creation of a great risk of death, that there be a likelihood or high probability of great risk of death created, not just a mere possibility (see Kampff v. State, supra, 371 So.2d at 1009-1010), and that there be at least another person within the "zone of danger" created by the defendant's conduct. Where the "other person" is removed physically or temporally from the conduct of the defendant in connection with the murder victim, the permissible scope of the aggravating factor may depend upon the close proximity in terms of time, location and intent to the act of killing by the defendant. See generally "Criminal Procedure: Creating Great Risk of Death to More than One Person as an Aggravating Circumstance," 34 Okla.L.Rev. 325 (1981). Certainly constitutional concern would arise were the aggravating factor construed to apply where only one person, the murder victim, is murdered (Jarrell v. State, supra, 216 S.E.2d 258) or where the "other person" is in another room (State v. Clark, supra, 616 P.2d 888). On the other hand, there can be no constitutional concern with the construction of the factor to apply to intended mass murders (Alvord v. State, supra, 322 So.2d 533; Stafford v. State, supra, 665 P.2d 1205) or indiscriminate shooting (Chenault v. State, supra, 215 S.E.2d 223; Lucas v. State, supra, 376 So.2d 1149). Similarly within constitutional limits is construction of the factor to apply where another is actually injured by virtue of the proximity to the defendant during the actual killing and the type of weapon used, including a handgun, revolver or shotgun (State v. Blazak, supra, 643 P.2d 694; State v. Doss, supra, 568 P.2d 1054). Perhaps close to constitutional limits but still within them *308 would be construction of the aggravating factor to apply where though no actual injury was sustained the other person was so close to the defendant during his act of killing as to be within the "zone of danger" posing a real likelihood of risk of death, considering the type of weapon used and the actual conduct of the defendant (Jones v. State, supra, 256 S.E.2d 907; State v. McMurtrey, supra, 664 P.2d 637; State v. Berry, supra, 391 So.2d 406).
Facially, the facts in this case fall within this later category. Defendant urges all there is in the case is "mere proximity." But the facts, undisputed for the purposes of the motion, reflect that defendant unloaded six rounds of his Colt.38 caliber revolver at the intended murder victim while the "other person" was sitting close to the victim on a couch. Several of the bullets struck the victim on the side next to which the "other person" was sitting. Whether ultimately the State will be able to prove that these facts establish beyond a reasonable doubt a knowing or purposeful creation of a great risk of death to the other person will be for the jury to determine. Insofar as this motion is concerned, it would appear that facially a construction of N.J.S.A. 2C:11-3c(4)(b) to apply to this case would not be impermissibly overbroad.[9]
*309 Finally, defendant asserts that the aggravating factor must be stricken because notice thereof was not timely. It is the prosecutor's position that the only limitation upon the serving of notice of intent to seek the death penalty and the particular aggravating factor(s) is that portion of N.J.S.A. 2C:11-3c(2) which provides that "[p]rior to the commencement of the sentencing proceeding, or at such time as he has knowledge of the existence of an aggravating factor, the prosecuting attorney shall give notice to the defendant of the aggravating factors which he intends to prove in the proceeding." To suggest that by this very general language the Legislature intended that in all cases the prosecutor has until commencement of the sentencing proceeding to file his notice of intention and the aggravating factor(s) is simply not supportable. The need for a defendant faced with capital punishment to have sufficient notice of the aggravating factor(s) so as to be able to prepare and adequately defend is paramount. State v. Timmons, 192 N.J. Super. 141 (Law Div. 1983). Our Supreme Court, pursuant to its constitutional rule-making authority has provided for such timely notice by requiring the prosecutor to give defendant an itemization of the aggravating factor(s) and discovery relating thereto at the time of arraignment, unless the time to do so is enlarged. R. 3:13-4(a). This rule means precisely what it says  notice of aggravating factor(s) must be given at arraignment  not whenever the prosecutor determines. If there is sufficient reason for an extension of time for such notice, it should be the prosecutor's responsibility to move for an enlargement and such motion should be made at the time of arraignment.
Here, the notice of intent to seek the death penalty and the aggravating factor to be relied on was not served until two months after arraignment. No motion to enlarge was made at arraignment, nor has a motion to enlarge nunc pro tunc been filed at any time. However, defendant has had notice since *310 September 1983. Trial is not expected to begin until March 1984. Defendant's counsel have had ample and sufficient opportunity to conduct the background information they require, to have medical evaluations of defendant performed and to file notice of an insanity defense with discovery relating thereto, and to file all the pretrial motions deemed necessary. Defendant asserts that he has been prejudiced by the delay because the scene of the murder has, since arraignment, been changed and because of difficulty in questioning "the other person." Photographs of the scene, however, were taken shortly after the killing and are available to the defense, and there is no indication "the other person" would have been any more cooperative right after arraignment than two months later. Further, there is no indication that the delay was the result of negligence or bad faith on the part of the Prosecutor. To the extent the Prosecutor has presented an explanation for the delay, it would appear that during the two-month period there were several other potential capital offenses being evaluated under the relatively new death penalty statute. It could reasonably be assumed that the delay arose as a result of the Prosecutor's attempts to carefully and fully evaluate each case.
The untimely filing of the notice of intent to seek the death penalty and the aggravating factor will, for the above reasons, be treated as if a motion to enlarge the time had been filed and granted nunc pro tunc. This determination, however, should not be taken as any indication of how future failures to comply with the time requirements of R. 3:13-4(a) will be treated.
For the foregoing reasons, the motions to dismiss the indictment and to strike the aggravating factor and remove the death penalty from the case are denied. The Prosecutor should submit a proposed order consistent with this opinion.
NOTES
[1] Certain portions of defendant's brief on the state constitutional issues contain citations to a variety of articles and statistical data relating to the public opinion of the death penalty, the deterrent effect of the death penalty and past application of the death penalty in Florida, Georgia, Texas and Ohio. Defendant has also included statistical data from an article in the Rutger's Law Review covering the period 1907 to 1960 during which New Jersey's prior death penalty law was applied. The State has moved to strike these portions of defendant's brief on the ground that the information is not supported by affidavit. The substantive treatment in this opinion of all of defendant's state constitutional contentions renders the State's motion to strike moot.
[2] Some of these same studies and data are relied upon by defendant in his state constitutional arguments. See n. 1 supra.
[3] Defendant contends that N.J.S.A. 2C:11-3a fails to provide unambiguous standard to guide a jury. In support thereof defendant refers to those cases where, under the particular facts, a jury could convict defendant of the purposeful or knowing killing under 3a(1) or (2) or the felony/murder contained in 3a(3). Since the facts in this particular case do not involve a felony/murder, defendant has no standing to challenge this aspect of N.J.S.A. 2C:11-3. Cf. Zant v. Stephens, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982).
[4] Defendant has urged that the statute requires application of the rules of evidence to the penalty proceeding, thereby limiting his ability to present evidence of mitigating factors. He notes the Legislature's failure to include in the enacted version of Senate Bill 112 the proposed language initially contained in 2C:11-3c(2) which provided that evidence of mitigating factors could be presented regardless of the rules of evidence whereas evidence of aggravating factors would be governed by the rules of evidence. As presently enacted, the statute makes no reference to the rules of evidence and, in connection with the catch-all mitigating factor, provides for "any other factor which is relevant." Thus, the only restrictive provision is that the evidence of mitigating factors be "relevant." To the extent a strict application of the rules of evidence might preclude admissibility of "relevant" mitigating evidence, Rule 5 states that the "adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained." Further, the scope of "relevant evidence" extends to all evidence "having any tendency in reason to prove any material fact." Evid.R. 1(2).
[5] Art. I, par. 9 provides: "The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury."

Art. I, par. 10 provides: "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense."
[6] The State has provided no response to this contention. It may well be that this type of issue should more appropriately be addressed during the penalty phase of the proceeding or during the disproportionate review by the Supreme Court of New Jersey, cf. State v. Bass, supra, 189 N.J. Super. at 452, n. 5. However, if defendant is correct in his contention then the facts of this case would surely not fall within defendant's asserted constitutional construction of 2C:11-3c(4)(b). The basic facts are that defendant entered the apartment of his former sister-in-law and fired six shots at the deceased from a Colt .38 caliber revolver. His former sister-in-law was sitting next to the murder victim on a couch. While there will be fact issues as to defendant's state of mind at the time, the location of the sister-in-law, and how close the bullets actually came to her, there can be no question that there was no bomb or similar device used and defendant's shooting was not an indiscriminate shooting toward a number of people. Accordingly, defendant is entitled to some consideration of his contention.
[7] "... knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person." Ga. Code Ann. § 27-2534.1(b)(3).
[8] "... knowingly created a great risk of death to many persons." Fla. Stat. § 921.141(5)(c).
[9] In a related argument, defendant contends that such a construction of N.J.S.A. 2C:11-3c(4)(b) would violate equal protection because it would result in application of the death penalty to a first offender involved in a single shooting incident while excluding a crime-prone mass murderer. As the above discussion of the construction by other states of their similar aggravating factor reveals, the linchpin of this argument, i.e., that the factor would not extend to a mass murder, is simply not accurate. See, e.g., Alvord v. State, supra, 322 So.2d 533. It is because N.J.S.A. 2C:11-3c(4)(b) could be construed to apply to this type of mass murder situation that perhaps the Legislature did not include in N.J.S.A. 2C:11-3c(4) § 210.6(3)(c) of the Model Penal Code ("at the time the murder was committed the defendant also committed another murder"). Moreover, this type of argument is more properly considered one of disproportionality and thus reviewable after the sentencing proceeding on appeal to the Supreme Court, should this case reach that stage.