STATE of Utah, Plaintiff and Respondent,

v.

Alvin JOHNSON, Defendant and Appellant.

No. 20123.

Supreme Court of Utah.

May 22, 1987.

David C. Biggs, Brooke C. Wells, Salt Lake City, for appellant.

David L. Wilkinson, David B. Thompson, Salt Lake City, for respondent.

DURHAM, Justice:

Defendant Alvin Johnson appeals from a decision of the Third Judicial District Court finding him guilty of first degree murder. We affirm.

Defendant waived his right to trial and was convicted after the district court's review of the transcript of defendant's preliminary hearing. The facts as revealed at the hearing are as follows.

Anna Clark and her husband, James, were travelling by freight train from Nevada to Wyoming when they stopped in Salt Lake City on August 1, 1983. The couple and their animals took up residence in Pioneer Park, where they met defendant some days later. Defendant befriended the couple and spent a day drinking alcohol and conversing with them in the park. As night approached, defendant suggested that the threesome move to an abandoned carpet warehouse nearby, where they could sleep without being disturbed. Defendant took the Clarks, along with their belongings and their animals, to the warehouse, which they entered through a basement window.

In the basement, the three played cards and continued to drink alcohol. Eventually, the Clarks unrolled their bedrolls and prepared to sleep. Suddenly, defendant "became unglued" and grabbed a shovel handle from among the Clarks' belongings. Brandishing the handle, defendant told James, "You are not going to steal my money." Defendant then ordered James to get up from his sleeping bag and strip. James complied, and defendant tied James' hands. When James asked defendant what

he was doing, defendant hit James across the shoulders with the shovel, causing him to fall to his knees. James again asked defendant what he was doing, and defendant said, "Shut up, because if you don't I'm going to start on your old lady." Defendant then took James behind some shelving in the basement. Anna was terrified and remained cowering on her sleeping bag. She heard defendant strike her husband and order him to lie on the floor. Defendant then came out from behind the shelves and stood in front of Anna. James called to Anna to "do whatever he says." Defendant stripped Anna and tied her hands behind her. Defendant squatted in front of Anna and forced her to perform fellatio on him. He struck her across the cheek when she failed to perform to his satisfaction. He then forced her to have intercourse with him. After defendant ejaculated, he attempted to choke her. When she went limp, he began bludgeoning her with the shovel handle he had used on her husband. When Anna regained consciousness, she called out to her husband across the darkened warehouse. She heard only a moan. She found him and again passed out.

Anna regained consciousness the next morning, dressed in her husband's clothes, and went to find help. Police officers found James' naked body, his hands tied, face down in a pool of blood. An autopsy indicated that James had received at least twelve blows to his head.

On the basis of the foregoing, the trial judge found defendant guilty of first degree murder, under Utah Code Ann. § 76–5–202(1)(c) and (d) (Supp.1986), attempted first degree murder, and aggravated sexual assault. The trial judge then sentenced defendant to life imprisonment. Defendant alleges error in the district court's rejection of his motion to dismiss the aggravating circumstances charged in the information.

The issue in this appeal is whether defendant's murder of James came within the aggravating circumstances defined in subsections (c) and (d) of section 76–5–202(1).

Section 76–5–202(1)(c) and (d) elevates a knowing and intentional killing to first degree murder when:

(c) The actor knowingly created a great risk of death to a person other than the victim and the actor.

(d) The homicide was committed while the actor was engaged in the commission of or an attempt to commit ... aggravated sexual assault.

We analyze these issues separately.

We agree with defendant that the facts established by the prosecution at the preliminary hearing do not constitute the type of aggravation anticipated by section 76–5–202(1)(c). We have previously interpreted that section to apply when the defendant created a setting in which he placed persons other than the victims at great risk of death "within a brief span of time in which were formed a concatenating series of events." *State v. Pierre*, 572 P.2d 1338, 1355 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978). That standard requires clarification to permit a meaningful application of the language of section 76–5–202(1)(c) to the facts of this case.

Section 76–5–202(1)(c) states that an actor commits first degree murder if he "knowingly or intentionally causes the death of another" under circumstances in which he "knowingly created a great risk of death to a person other than the victim or the actor." A proper reading of the statute requires an examination of the manner in which the killing occurred and consideration of whether the knowing and intentional killing took place under circumstances in which the actor knowingly exposed someone other than himself and his victim to a great risk of death because of his knowing or intentional murder of his victim.

■ Section 76–5–202(1)(c) properly applies to situations in which the defendant kills his victim in a manner by which he knows he is gravely endangering others. *See Chenault v. State*, 234 Ga. 216, 215 S.E.2d 223 (1975) (defendant was convicted under a statute similar to section 76–5–202(1)(c), but which also includes language concerning killings in public places, when he assassinated his victim by opening fire in a crowded church); *State v. Murtrey*,

136 Ariz. 93, 664 P.2d 637, *cert. denied,* 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983) (defendant shot his intended victims in a crowded bar); *State v. Sonnier,* 402 So.2d 650 (La.1981), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983) (defendant made his victims lie on the ground and shot them with rapid fire from a rifle); *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977) (defendant shot victim in a crowded auditorium).

We agree with the New Jersey Superior Court's interpretation of New Jersey's first degree murder statute's grave risk of death aggravating factor. That court stated:

> [T]he facts must include a knowing or purposeful state of mind *vis-a-vis* the creation of a great risk of death, that there be a likelihood or high probability of great risk of death created, not just a mere possibility ... and that there be at least another person within the "zone of danger" created by defendant's conduct.

*State v. Price,* 195 N.J.Super. 285, 478 A.2d 1249, 1260 (1984) (citations omitted). We also agree with the New Jersey court that there may be circumstances in which a defendant may be guilty although the endangered person is physically removed from the defendant's conduct, but we note that such cases require a careful consideration of a defendant's intent and knowledge of the risk and the endangered person's proximity in time and place to the murder.

■ Under that standard, we do not think that defendant's murder of James on the other side of a basement, separated from Anna by shelving, constitutes the kind of conduct described by section 76–5–202(1)(c). The State produced no evidence indicating that Anna was placed at grave risk of death by defendant's battery of James, nor did it produce evidence indicating that defendant knew that his conduct toward James placed Anna at great risk. This case resembles *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). In that case, the Arizona Supreme Court held that the victim's wife, who was in another room of the home when her husband was shot by the defendant, was not, even assuming the possibility of a ricocheting bullet, within the zone of danger. *Id.* at 435–36, 616 P.2d at 895–96.

■ We disagree, however, with defendant's assertion that his conduct did not come within the aggravating circumstances described in Utah Code Ann. § 76–5–202(1)(d) (Supp.1986), which elevates a knowing and intentional killing to first degree murder if the murder was committed "while the actor was engaged in the commission of, or an attempt to commit ... rape ... or aggravated sexual assault." Defendant argues that the aggravated sexual assault of Anna was an "afterthought." That assertion is belied by the record, which contains evidence from which the trial judge could have drawn the conclusion that defendant assaulted James in order to keep him from interfering in defendant's attack on Anna. Early in the attack on James, defendant told him that he would "start on [his] old lady" if James did not remain silent. Thus the trial court could infer that defendant was contemplating the attack on Anna at the time he first attacked James. After James had been severely beaten by defendant, James instructed Anna to do whatever defendant told her to do. Defendant then sexually assaulted Anna.

We think that the evidence supports the conclusion that James was murdered *while* defendant was engaged in assaulting Anna. The Supreme Court of Indiana has defined "while" in context of Indiana'a death penalty statute:

> Although we have not previously considered this word as it is used in the death penalty statute, we have repeatedly found that the phrase "while committing" denotes a continuing chain of events under our felony-murder statute. In other words, when there is a close proximity in terms of time and distance between the underlying felony and the homicide and there is no break in the chain of events from the inception of the felony to the time of the homicide, we treat the two events as part of one continuous transaction. *Stroud v. State,* (1979) 272 Ind. 12, 394 N.E.2d 770.

According to Webster, the word "while" has more than one meaning, but the primary meaning of the word when it is used as a conjunction is "during the time that" or "as long as." *Webster's Third Dictionary* (Unabridged ed. 1961). This clearly implies a continuity of action over a span of time. The use of the word "while" in our felony murder statute comports with this definition as do our older cases. In *Bissot v. State,* (1876) 53 Ind. 408, we found that a homicide was deemed committed during the perpetration of a felony if the homicide was within the *res gestae* of the felony. And in a civil case, we specifically held that the term "while" "is the equivalent of and means *during the time* they are stockholders in the company." *Stafford v. St. John,* (1905) 164 Ind. 277, 289, 73 N.E. 596, 600 (emphasis added). We find no reason to believe that the legislature intended a different meaning of the word "while" in the death penalty statute than has been used for that word in the felony murder statute and in older cases.

The Supreme Court of Ohio reached a similar conclusion when it considered the use of the word "while" as it was used in the Ohio death penalty statute. The court said:

> "The term 'while' does not indicate, as appellant contends, that the killing must occur at the same instant as the attempted rape, or that the killing must have been caused by the attempt, but rather, indicates that the killing must be directly associated with the attempted rape as part of one continuous occurrence, a situation present in the instant case."

*State v. Cooper,* (1977) 52 Ohio St.2d 163, 370 N.E.2d 725, 736, rev'd on other grounds, *Cooper v. Ohio,* (1978) 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157.

*Davis v. State,* 477 N.E.2d 889, 894–95 (Ind.), *cert. denied,* — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985) (footnote omitted). We have previously adopted the *res gestae* analysis. In *State v. Weddle,* 29 Utah 2d 464, 511 P.2d 733 (1973), we found that the defendant was guilty of first degree murder because he killed in perpetra-

tion of or an attempt to perpetrate a robbery when he killed a deputy who stopped at defendant's stalled getaway car after the robbery had been committed. 29 Utah 2d at 466, 511 P.2d at 735.

In the present case, the facts presented at the preliminary hearing support the conclusion that defendant's murder of James and assault on Anna were one continuous, interrelated occurrence. Indeed, the evidence suggests that the attack that led to James' death was in part undertaken to facilitate defendant's assault on Anna.

Defendant cites cases vacating jury verdicts when the evidence was insufficient to support one aggravating factor and the jury returned a general verdict, making it impossible to find unanimity on the permissible aggravating factor, and argues from these cases that if we find defendant's conduct did not fall within either of the subsections charged, we must reverse and remand the case for a judgment of second degree murder. We disagree. The cases cited by defendant are relevant to this case, which was tried to the bench, only in that they suggest an argument that this Court should not sustain a conviction if we cannot determine whether the finder of fact relied on an inapplicable aggravating circumstance. That argument is not relevant here because the record indicates that the judge found defendant guilty under both subsections. The trial judge considered and rejected a defense motion arguing that the facts could not sustain defendant's conviction under the aggravating circumstances charged. At the conclusion of his review of the evidence, the trial judge found defendant guilty as charged in the information, i.e., guilty under both aggravating circumstances.

The conviction is affirmed.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.